CALEDONIA,
March,
1843.

Conner
v.
Chase et al.

---

BENJAMIN CONNER v. JOHN CHASE, ELIHU GRANGER, MARTIN M. MILES, ISAAC KINASTON, JOSEPH G. KINASTON, and JESSE G. KINASTON.

### ( In Chancery. )

Parol proof is not admissible to show an absolute deed to have been intended as a mortgage, when the grantor conveys by deed of warranty, and possession follows the deed through several successive grantees.

Knowledge of a parol contract, between a prior grantor and grantee, will not affect one who purchases from the person having both the legal title and possession, unless he purchases fraudulently, and with intent to defeat the equitable claim of the first grantor.

Length of time, short of the period which will bar redemption, may afford a strong presumption against a claim set up as an equitable right of redemption, resting wholly on oral testimony.

The answer of one defendant, who has ceased to have any interest in the subject in controversy, is no evidence against the other.

THIS was an appeal from a decree of the court of chancery. The orator, in his bill, which was entered March term 1836, alleged,—That, on the 22d day of January, 1824, he was seized in fee simple of five acres of land, part of the south west corner of lot 41, in Sheffield, with a saw mill privilege; that he had in contemplation to build a saw-mill on said lot, and to that end, purchased of John Chase forty five dollars worth of saw-mill irons, and to secure to said Chase the payment of said sum and interest, on the 23d day of January 1825, conveyed to said Chase, in fee simple, said land, as a pledge or mortgage, to secure the payment of said sum; that said Chase, in consideration that the orator would so convey, promised him that, on payment of said sum and interest, he, said Chase, would quit claim said premises to the orator, and at that time agreed to give a written defeasance to that effect, but whether such defeasance was ever given the orator could not state; but if any was given, it was lost or destroyed.

2. That the the orator, being also indebted to Elihu Granger, it was agreed between Chase, Granger, and the orator, that Chase should assign his claim against the orator to Granger, on payment of the amount by Granger, and that Chase should deed the same premises to Granger, as security for both debts; whereupon, on the 3d day of May, 1824, Chase executed his deed of said premises to Granger. The bill contains the same averment as to Granger's agreement to execute a written defeasance, as before stated, and that said conveyance was understood by the parties as a mere mortgage.

3. That, on the 8th day of November, 1825, said Granger deeded the same premises to Martin M. Miles, for a consideration inadequate for the absolute title, and that he had notice that Granger held only a mortgage title.

4. That on the 8th day of November, 1829, Miles conveyed the same premises to Isaac and Joseph G. Kinaston, with similar averments as to the consideration, and as to notice that Chase's and Granger's deeds were intended only as mortgages. The four deeds above named were absolute on the face of them, and contained the usual covenants of seizin and warranty.

5. That Isaac Kinaston, on the 2d day of December, 1830, quit claimed one fourth part of same premises to Jesse G. Kinaston; on the 28th day of June, 1836, another fourth part to Joseph G. Kinaston; and on the 25th of October, 1831, Jesse G. Kinaston quit claimed to Joseph G. another fourth part; and that all the parties to these several conveyances, had notice of the nature of Chase's and Granger's deeds, and were, therefore, only assignees of their mortgage title to the premises.

The orator prays for liberty to redeem, and that the defendants account for the rents and profits.

The answer of John Chase, admits the facts as to the character of the conveyances from Conner to him, and from himself to Granger, as claimed by the orator's bill.

The answer of M. M. Miles, admits in substance, that he purchased of Granger, with full knowledge that Granger's deed from Chase, and Chase's deed from Conner, though absolute on the face, were intended to operate merely as

mortgages, and also states conversations between himself, Isaac, Joseph, and Jesse G. Kinaston, which occurred shortly before he, said Miles, conveyed said premises, tending to show that said Kinastons were acquainted with the character of the conveyances from Conner to Chase, and Chase to Granger, and that they purchased *with notice,* as claimed in the orator's bill.

Joseph G. Kinaston in his answer says, " that, as for the consideration upon which, or for which, the said Conner deeded to the said Chase, or the said Chase to the said Granger, he had no knowledge, belief, or suspicion, at the time he received his several deeds from Martin M. Miles, Isaac Kinaston, and Jesse G. Kinaston, that Granger was under any obligation to deed said five acres of land and saw-mill to the said Conner, on the said Conner's paying him a certain sum of money, or paying him any sum of money, or any other thing. Nor has this defendant ever known, or had any suspicion that the said Chase or Granger had agreed with the said Conner for any consideration whatever, to execute a written defeasance to the said Conner, of said five acres of land and saw-mill ; but this defendant had frequently heard it said that the land and mill was put into Granger's hands as security for his labor and mill irons, &c., but had no knowledge but that Granger and Conner had settled amicably ; the general report, however, was that Granger went off without paying him his due, and that he had wronged him, but how much, or in what way, this defendant never learned until 1835, when Conner published it in the North Star, nor did this defendant possess any other, or different knowledge, information, belief or suspicion in relation to Conner's having any claim in law or equity, upon Chase or Granger for the deeding of said land and mill to Conner, at the time he paid said Miles, and Kinastons for the same, than that which he possessed when he bought the same. As to who built the mill, report says that Conner built it, and that Granger worked for him, but how the facts were, this defendant never had any other means of knowledge. When said Miles purchased said land and mill, this defendant thinks it was not worth over three hundred dollars. This defendant knows nothing of Miles' information in relation to the tenure by which Granger held the premises. As to what Miles paid

Granger for the said land and mill, this defendant has no knowledge upon the subject, except what he has obtained from the records of deeds in Sheffield. This defendant knows that immediately after Miles purchased, he took possession of said Mill and completed the finishing of the same. This defendant knows nothing about the rents and profits before he purchased. And this defendant, further answering, says, that at the time he purchased, with his father, said land and mill, he verily supposed and believed, that Miles had a good and perfect title to the same, and that Conner had no claim or interest in, or demand upon the same, and his knowledge, information, belief, and suspicion, was the same and in no wise changed at the time he made his several payments for the same; if he had not supposed said Miles had an indefeasible estate in fee simple in said land and mill, he should not have been concerned in the purchase; and his knowledge, information and belief was the same and no other when this defendant purchased of his father and brother said premises, and paid them for the same; and this defendant further says, that, at the time he made his several purchases as aforesaid, and payments as aforesaid, he had no knowledge, and did not believe or suspect but what said Chase or Granger, had each a good and indefeasible estate in fee simple in said land and mill before and at the time they respectively conveyed the same; but this defendant has understood that said Conner intended to prosecute the said Granger whenever he could find him and recover what he owed him. And this defendant did not know, understand, believe, or have a suspicion, then, nor before he had fully made payment to said Miles, that Miles' title to said mill and land was only a mortgage, or in the nature of a mortgage, or that Granger's title, or Chase's title was only a mortgage, or in the nature of a mortgage; but did understand that the several deeds from Conner to Chase, from Chase to Granger, and from Granger to Miles, were absolute unconditional deeds, conveying the premises in fee simple, and although this defendant had heard that the mill and land were put into Granger's hands for security for his labor, and materials furnished, yet at the time this defendant purchased and made his several payments, he did not suppose, believe or have a suspicion, that Conner could ever have compelled Chase or

Granger to redeed to him, unless they, or either of them, were or was so disposed, and if Chase or Granger, while they held the legal title to said mill and land, for security, refused to deed to Conner, Conner was wholly without remedy. Such was his understanding, information and belief upon the subject; and that Conner's interest was not affected by his purchase, or whether said mill remained or should be destroyed, it being irrecoverably gone from him. And this defendant further answering says, that he had not at the time he and his father took and received their deed of said land and mill, of said Miles, nor at the time of paying for the same, any knowledge, information, or belief, nor any notice, information or reason for belief, or suspicion, that Granger received his deed from Chase as security for what Conner owed Granger, in that sense which made it a mortgage, or reserved to the said Conner any more interest in it than every other man had; or that the said Conner could, by paying Granger, compel him by any possible means, to deed the said mill and land to him, the said Conner, against his, the said Granger's will; and yet this defendant says he had heard it reported, before he purchased of Miles, that said land and mill was put into the hands of Granger, as security for his labor and materials furnished by him; but from what source or whether true or false, this defendant did not know."

The defendants, Jesse G. and Isaac Kinaston in their several answers, deny all knowledge of any trust between Conner, Chase and Granger, and declare that they purchased said premises without notice that Conner ever had any claim thereon.

The defendant Granger, being out of the state, made no answer to the orator's bill.

The testimony of a large number of witnesses, tended to show, from acknowledgments made by the Kinastons, from time to time, that they, at the time of their purchase from Miles, and of the subsequent conveyances of the premises in question, were knowing to the fact that the deeds of Conner to Chase, and Chase to Granger were given as *security*, merely, and that Conner still had a claim upon the property.

*E. Paddock* and *J. Bell*, for defendants.

1. The statute regulating conveyances of real estate, (sec-

tion 4,) is a full and perfect answer to this bill, whether pleaded or insisted on in the defendant's answers. The deed from Conner to Chase contains no condition of defeasance. If any agreement existed between them, it was for a re-purchase and re-conveyance, on payment of a sum stipulated. It was, therefore, an agreement for the sale of land within the meaning of the fourth section. Newland on Con. 200–1; Mitford, 221 ; 2 Johns. Ch. 291 ; 1 Atk. 493. The agreement, if any, created only a personal trust, which did not follow or extend to the land, and as such only can Conner avail himself of it.

2. Parol evidence is inadmissible in this case to contradict and defeat deeds absolute on their face. Its admission would render the statute a dead letter, and open the door to frauds which would subvert the foundations upon which all titles to real estate rest. *Parteriche* v. *Pawlet*, 2 Atk. 384 ; *Tenney* v. *Tenney*, 3 Atk. 8 ; *Paine* v. *McIntyre*, 1 Mass. 69 ; *Rich* v. *Elliott*, 10 Vt. R. 211 ; *Isaacs* v. *Elkins*, 11 Vt. R. 677; *Bentley* v. *Bradley*, 8 Vt. R. 243 ; *Reed* v. *Wood*, 9 Vt. R. 285, & 5 Vt. R. 514 ; Sugd. 98 & 150.

3. This is a case *sui generis*. In all the reported cases there has been an outstanding deed, showing definitely the nature and amount of the claim set up, fixing the amount due, or the duties to be performed, at least showing what *was*, that it might be known what *was not*. Here all that we can learn about Conner's deed we learn from the town records. As to what the agreement was, or what was the amount due, the court have nothing to direct them. It is calling on the court to take a leap in the dark. *Boyd* v. *McLean*, Johns. Ch. 590 ; *Hine* v. *Dodd*, 2 Atk. 275–6–7. See also *Day* v. *Dunham*, 2 Johns. Ch. 191.

4. The evidence, in this case, consists almost wholly of acknowledgments and statements purporting to have been made by the Kinastons many years ago. Evidence merely parol, though sometimes clearly admissible, will be received with great caution. Evidence of naked declarations, made by the purchaser himself, is, as *Sir Edward Grant* says, "in all cases most unsatisfactory, on account of the facility with which it may be fabricated and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection

CALEDONIA, may totally alter the effect of the declaration." Sugden's
*March,*    Law of Vendors, 446.. Such declarations ought never to be
 *1843.*    received as evidence of title. *Jackson* v. *Sherman,* 6 Johns.
Conner      21; and opinion of Ch. Kent in *Marks* v. *Pell,* 1 Johns.
   *v.*      Ch. 599. See also *Jackson* v. *Cady,* 16 Johns. 335; Sug-
Chase *et al.* den, 532; *Foster* v. *Buckman,* 1 Johns. Ch. 300; 1 Mad.
            261.

5. No sufficient notice to the Kinastons has been proved. In *Day* v. *Dunham,* Ch. Kent says :: " The notice that is to break in upon the registry act must be such as, with the attending circumstances, affect the party with *fraud,* and here certainly is no fraud to be suspected." See also *Hine* v. *Dodd* above cited. See Kent's Comm. 4. See opinions of Ld. Alvanley in *Holland* v. *Stainbridge,* 3 Ves. 478, cited 2 Johns. Ch. 190.

6. This, being a stale claim, ought not to be favored. The plaintiff has slept upon his rights for years, and it is a just rule of law that if one can enter, he *must* enter — he must make his claim. Shep. Touch. 153. It was a fraud in Conner to let his claim lie dormant so many years, while the property in question was passing through so many hands by absolute deeds.

7. If either Isaac, Joseph, or Jesse purchased without notice, Joseph will hold such part. For one may purchase with notice and convey a good title to one who has no notice. And one having notice may take a conveyance from one having no notice and have a good title. 2 Atk. 139, 242; 1 Johns. Ch. 219; 1 Atk. 571; Ambler, 313.

*N. Baylies, I. Fletcher & G. C. Cahoon,* for orator.

1. *What is a Mortgage ?*—2 Story's Equity, 287, § 1018. " It is unquestionably true that chancery suffers itself to be little embarrassed with the forms which any transaction assumes. In whatever hand the fee may remain, or however disguised may be the terms, if the real object be the taking or holding land, for the security of a loan or debt, it is in equity a mortgage." *Campbell* v. *Worthington, Ex'r. of Watrous,* 6 Vt. R. 453; *Gibson* v. *Seymour & Hall,* 4 Vt. R. 518; *Williams & Putnam,* v. *Parish et al.* decided in Orange, county, March term, 1831, referred to in 4 Vt. R.

522; 1 Powell on Mort. 116, and cases in Am. Ch. Dig. 338–9.

2. The maxim—*once a mortgage*, always a mortgage. See 1 Powell on Mort. 116–22; *Clark & Davis* v. *Henry*, 1 Cow. 324; 2 Story, 287, sec. 1019.

3. Parol evidence is in some cases admissible to prove a deed was executed as a mortgage, notwithstanding the statute of frauds. *Gibson* v. *Seymour & Hall, Williams* v. *Parish*, 4 Vt. R. 522; 2 Story, 287, §1018; *Marsh* v. *Pell*, 1 J. C. R. 594; *Strong* v. *Stewart*, 4 J. C. R. 167; *Washburn* v. *Merrill*, 1 Day, 139, referred to in 1 Powell on Mort. 120, n. 2; *Maxwell* v. *Montacute*, Pr. Ch. 326; *Young* v. *Peachy*, 2 Atk. 258; *Walker* v. *Walker*, 2 Atk. 99, referred to in Powell on Mort. 119, n. 1.; 2 Story's Eq. 77, §768; 1 Powell on Mort. 150; see also *Card* v. *Jaffray*, 2 Sch. & Lef. 374; and *Barney* v. *Currier*, 1 D. Chip. R. 315.

4. *Lapse* of time—*when it bars.* From the date of the deed from Granger to Miles, to the service of the bill, is ten years, three months, and twenty-two days, and from the time it was deeded to the Kinastons, eight years, two months and eight days. This was caused by the *fraud* of Miles and the Kinastons in concealing from the orator that Miles, when he took his deed, had a full knowledge that Granger had only a mortgage title and that the orator had an equity of redemption. Without evidence of this fact he could not proceed, and, as appears by Conner's affidavit on petition for rehearing, he brought his bill within less than one year after discovering testimony on this point. No length of time is a bar to redemption where there is fraud, or where, by agreement at the time of the transaction, the mortgagee is to enter and keep possession until he is paid out of the profits. *Marks* v. *Pell*, 1 J. C. R. 584; Am. Ch. Dig. 354.

In case of *fraud*, time, in order to bar the remedy, will not begin to run until the party acquires a knowledge of the facts constituting the fraud. B. & B. 129; 1 Powell on Mort. 364, 365; *Arden* v. *Gregory*, 2 Eden, 295; 2 Barb. & Harr. 310, §89.

5. *Effect of sale by mortgagee.* A mortgagee in possession is trustee of the mortgagor, and if any one purchases, with notice, from the mortgagee, the purchaser becomes trustee

CALEDONIA, of the mortgagor. Such sale by the mortgagee does not af-
March, fect the right of the mortgagor to redeem. 2 Barb. & Harr.
1843
Conner Eq. Dig. 267, c. 16, 312, c. 28, 29; 2 Cowen, 238; *Wil-*
*v.* *son* v. *Throop,* 2 Cow. 203; *Aymor* v. *Hill,* 5 J. C. R. 570.
Chase *et al.*
  6. *Effect of purchasing with notice.*—See Story's 1st.
Com, on Eq. 383, $395–6; 2 Story, 93, §784; 96, §788,
89. "The purchaser with notice is bound to the same ex-
tent and in the same manner as the person was of whom he
purchased." Sugden's 5th Letter to a Man of Property, page
42, Vol. 1 Law Library. See, also, *Powell* v. *Delton,* 2 B.
& B. 415; *Taylor* v. *Stebbins,* 2 Ves. jr. 440; *Waymouth*
v. *Boyce,* 1 Ves. jr. 425; *Smith* v. *Law,* 1 Atk. 490; 1
Vernon, 363; *Mead* v. *Lord Orrery,* 3 Atk. 238; *Eyre* v.
*Dolphin,* 2 B. & B. 290; Chitty's Eq. Dig. 718.

This case is not one where priority of record comes in
question; but it belongs to that class of cases where the pur-
chaser purchases with notice that there was an incumbrance
upon the estate when he purchased it.

The registry acts of England, Ireland, New-York and
Vermont, are materially different; and, consequently, *Bushell*
v. *Bushell,* 1 Sch. & Lef. 96; *Hine* v. *Dodd,* 2 Atk. 275;
*Holland* v. *Stainbridge,* 3 Ves. jr. 478; *Day* v. *Dunham,*
2 J. C. R. 190; and *Foster* v. *Beekman,* cannot be relied on as
law applicable to this case. As to what is notice, in Vt.
mont, see *Ludlow* v. *Gill,* 1 D. Chip. R. 49; *Barney* v.
*Currier et al.,* 1 D. Chip. R. 3–15; *Rublee* v. *Mead,* 2 Vert.
R. 544; and *Baxter* v. *Mark & Luke Goss,* decided at the
last term of this court in Caledonia county.

The plaintiff having shown that the title which he parted
with was a mere mortgage, and that, *prima facie,* he has a
right to redeem, the defendant, to protect himself, must show
a better title, or redemption will be decreed. He must show
his grantor in possession at the time he took his deed; that
he paid a valuable consideration for the land, and paid
for it without notice of the orator's claim. The burthen is
on defendant to show this, and not on the orator. If the
defendant, in his answer, does not show all the requisites of a
better title, it would *seem* that the orator is not called upon to
show any thing about the defendant's title. Ch. J. Kent says,
if a purchaser wishes to rest his claim on the fact of being an
innocent, *bona fide* purchaser, he must positively deny notice,

even though it be not charged. *Deming* v. *Smith*, 3 J. C. R. 344, and English decisions there referred to. See also, 2 Powell on Mort. 552, in text, and n. i.

As to what the defendant must aver to show a better title, see Mit. 222. That he was a *bona fide* purchaser without notice is mere matter of defence. *Gulatain* v. *Erwick*, 1 Hopkin's R. 55. This *averment*, Miles, or either of the Kinastons, might have made in his answer, and whether *true* or *false* would depend on proof. But if no such *averment*, (as such,) is made, the court will presume that there were not facts to warrant it. But the court will not say that a defendant is an innocent purchaser without notice, when the defendant does not say so himself. If the defendant was not an innocent purchaser himself, but purchased of a person who was, then he may clothe himself with the *honesty* of his grantor by avering in his answer the same facts to make out a better title in his grantor than the plaintiff. *That* the law would have required the grantor to aver, had the plaintiff brought a suit against him, before he conveyed to the defendant. *Banfer* v. *Platner*, 1 J. C. R. 213; see 2 Powell on Mort. 635–7; 1 Hopk. R. 5; 8 Cowen, 361.

Miles' answer admits that he purchased *with notice* that Chase deeded to Granger for security merely, as charged in the bill. He is therefore bound to the same extent, and in the same manner, as Granger of whom he purchased. Story's Com. on Eq. 383, §395; 2 Story, 93, §784; 96, §788–9. Sugden's Letter, 1 Law Library, 42, before cited. Connor had the same right to redeem the property in the hands of Miles as in the hands of Granger,—Miles having purchased with notice. That Miles gave a consideration does not alter the case. 1 Vernon, 363; 3 Atk. 238.

The answer of *Joseph G. Kinaston*, that although he had heard that said land and mills had been put into Granger's hands as security, &c., yet that he did not suppose that Conner could compel either Chase or Granger to redeed to him, unless so disposed, as the deeds were absolute on the face, &c., amounts to an admission of notice on his part, and if he has mistaken the law, his ignorance cannot shield him. The maxim *Ignorantia juris non excusat* is respected in equity as well as at law. 1 Story's Eq. 121, §111 to 115; Jeremy's Eq. Jurisd. 366; 1 Mad. 60.

The evidence shows the rest of the defendants to have had notice of Conner's claim at the time of the execution of their several deeds, and the law which applies to Chase, Miles and Joseph, has the same application to them.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This cause has been elaborately argued at this term and at two previous terms. It would have been decided at the last argument but that the members of the court who heard it, immediately separated and had not the opportunity for consultation which was desired. At every argument the court, or at least a majority of them, have been agreed in the result to which we have now arrived, and in this result the court, are at this time, unanimous. It appears that in the year 1823, the orator purchased a tract of land of about five acres, in Sheffield, on which was a saw-mill privilege. On the 22d day of January, 1824, he conveyed the same by deed of warranty, absolute on its face, to John Chase. John Chase, on the 2d day of May, same year, 1824, by a like deed of warranty, conveyed the same premises to Elihu Granger. Granger, on the 8th of November, 1825, by a similar deed of warranty, conveyed to Martin M. Miles, and Miles, on the 8th November, 1828, by a like deed, conveyed to Isaac and Joseph G. Kinaston, two of the defendants; and in 1830, Isaac Kinaston, deeded one fourth of the mill to Jesse G. Kinaston, another of the defendants. The object of this bill is to prove that the conveyance from Conner to Chase, in 1824, was intended only as a mortgage to secure Chase for what Conner then was, or might be, indebted to him, and that when Chase conveyed to Granger, is was understood between Conner and Granger, that Granger should hold the same, only as security for what Conner might be owing him ; that Miles and the Kinastons had knowledge that such was the nature of those conveyances ; and the prayer is that the defendants may be treated as as mortgagees, account for the rents and profits, and that the orator may be at liberty to redeem the premises. It is to be observed that the several deeds before-mentioned were recorded in the town clerk's office, and the several grantees entered into and remained in the actual possession during the time they owned the same.

To entitle the orator to the relief prayed for, the court are called on to decide that a deed conveying, or purporting to convey an estate unconditionally, may nevertheless, be proved by parol evidence, to be a conveyance of an estate upon condition, or, in other words, a mortgage, subject to all the incidents of a mortgage ; and that this character shall attach to it, notwithstanding the estate has passed to several successive grantees, and possession followed the deeds, if, by parol evidence, it can be proved that these grantees have either knowledge or notice of the claim on the part of the first grantor to be considered as a mortgagor. The court are of opinion that neither the principles of law or equity, or the facts proved in the case, would warrant them in granting the orator the relief prayed for.

In the first place, it would be an obvious perversion of the well established rule of evidence that the intent of the parties as expressed by their writings, cannot be controlled by parol evidence, as well as a direct infringement of the statute of frauds.

In the second place, if the deed from the orator to Chase could have been treated as a mortgage between them, at the time it was executed, it would not have that character as to subsequent purchasers under Chase, nor would they be affected by any agreement between the orator and Chase, or between the orator and Granger, unless the purchasers had full knowledge of the character and nature of the contract and agreement between the parties, and purchased fraudulently, and with the intent thereby to defeat the right of the grantor, the orator in this bill. Under our recording system, a purchaser of one who has the legal title and possession, *is not* to be affected by the disputes and claims between the legal owner and the claimant in equity, when no suit is pending between them. The proof of the equitable claim rests wholly in parol, to be proved *alone* by the testimony of witnesses, and the purchaser has no fraudulent intent to defeat the equitable claim.

In the third place, the length of time in which these defendants, and those under whom they claim, have had the premises in question as absolute owners, not recognizing any rights in the orator,—for it seems by the testimony of one witness, that in May or June, 1824, Granger forbade this orator from going into the mill or removing any thing out of

it,—affords a strong presumption either that the orator never had any equitable claim, such as he now asserts, or that it was abandoned; and requires of this court to leave him to assert whatever claim he may have, as a personal claim against Granger. The rights of these parties are not reciprocal on the principles contended for by the orator, as the defendants, Kinastons, cannot be considered as the assignees of a mortgage, or as having any debt against the orator, Conner, which they can enforce at law or in equity.

In the fourth place, as the answer denies that either the deed to Chase, or from Chase to Granger, was subject to any condition or trust, the orator, if entitled to any relief, would be under the necessity of proving not only the trust, but notice of the trust in every one in the chain of title. A grantee of an absolute title may sell to one having notice, and the latter will hold the estate free from the trust. There is no sufficient evidence of any such knowledge in Martin M. Miles, except the answer of Miles, and this is no evidence against the present holders of the estate.

That the introduction of parol testimony, of the nature of that relied on in the case, to show that either the deed to Chase, or from Chase to Granger, was not absolute, but defeasible, would contravene the rule of law, in relation to the effect of deeds and writings, as well as militate with the provisions of the statute of frauds, appears to me very clear. The case itself and the testimony, admonish us of the danger of making any further inroads on the rule of law as well as on the statute, and shows the uncertain and unsatisfactory tenure by which real estate is held, if it is liable to be changed, altered or destroyed by the slipping memory of witnesses, or through the mistakes or falsehoods of men on whom no reliance was placed by the parties, to remember or retain the evidence of their agreement, contract or understanding. The proposition that parol evidence is admissible to show that an absolute deed was intended only as a mortgage, has been laid down too loosely and unguardedly by elementary writers; and learned judges have sometimes, rather incautiously, stated the proposition, without guarding it from misconceptions and misconstructions, by shewing in what cases it does, and in what cases it does not obtain; and the extreme length to which this doctrine has been carried in the state of

New-York has inclined one of their learned judges to dissent entirely from the doctrine, 21 Wen. 36, and another, to speak of it as "latitudinary," 3 Cowen & Hill's notes, 1433. Out of that state the proposition has not met with much favor. Where, through fraud, accident, or mistake, a deed or any written instrument is made differently from what the parties meant to make it, or where a deed is executed and the other party refuses to execute a defeasance, such being the contract between the parties, a court of equity will afford the requisite relief, either by reforming the instrument or setting it aside, as the case may require; and a resort to parol proof may be had to discover the fraud, accident, or mistake. Where an absolute conveyance has been made, and the party admits in his answer, that a security only was intended, or where the grantee has, *in writing*, on the deed, admitted it to be for security, or where, by other writing, he has made the same admissions, courts of equity have treated it accordingly. These decisions, however, have proceeded wholly on the ground that, through mistake or fraud, the deeds were made to express an intent different from what the grantor really did intend, or that the evidence was sufficient under the statute. But where a man gives an absolute deed, and there is no fraud in obtaining it, and no agreement in relation to executing a defeasance, nor any writing between the parties, and no admission in an answer in chancery, and they have conducted as though an absolute sale was intended, I cannot think parol evidence admissible to show such a deed a mortgage, in order to give the grantor a right of redemption. The leading case upon this subject, and on which the opinion of the elementary writers, and the *dictum* of some judges, has been founded, as warranting the admission of parol proof in such a case, is *Montacute* v. *Maxwell*, reported in Pere Williams, 618; 1 Strange, 236; 1 Eq. Cases Abr. 19 pl. 4–5; 2 Eq. Ca. Abr. 592, pl. 6. The case itself was a bill brought by a wife to compel the defendant, her husband, to execute an agreement made before the marriage, in relation to her separate estate. The statute of frauds was pleaded to the bill, and was allowed at the first hearing— Lord Chancellor Parker observing, " that where there is no ' fraud, only relying on the honor, word, or promise of the ' defendant, the statute making these promises void, equity

CALEDONIA, 'will not interfere." The bill was amended, setting forth other facts, and also setting forth a letter of the defendant; and this letter the chancellor considered as taking the case out of the statute, and ordered the plea to stand for an answer. The case itself affords no authority for admitting parol evidence, to show an absolute deed intended as a mortgage, but the reverse. In deciding the case, however, the Lord Chancellor is reported to have said, probably as illustrating his views in that case, that when a man treated to lend money on a mortgage, and the conveyance proposed was an absolute deed from the mortgagor, and a deed of defeasance from the mortgagee, and after the mortgagee had got the conveyance he refused to execute the defeasance, yet Lord Nottingham decreed it against him *on the fraud*. So when an absolute conveyance is made, for £100, to A., and instead of entering and receiving the profits, A. demands interest for the money and has it paid to him, this will be admitted to explain the nature of the conveyance. To these *dicta* no possible objection can be made. It presented a case of direct fraud, where the deed was fraudulently obtained and the testimony in relation to receiving interest, was admissible, with other competent testimony, to explain the nature of the transaction. In the cases of *Walker* v. *Walker*, 2 Atk. 99 ; *Young* v. *Peachy*, 2 Atk. 257 ; *Joyner* v. *Strafan*, 3 Atk. 389 ; *Dickson* v. *Parker*, 2 Vesey, 225, no point either arose in the case, or was decided in relation to a mortgage ; but the chancellor, in each of those case, referring to the case of *Montacute* v. *Maxwell*, recognizes and reiterates the principle, that when the agreement between the parties was, that a mortgage should be executed by a deed and defeasance, and the deed is executed, and the party fraudulently refuses to execute a deed of defeasance, or, taking advantage of the ignorance of the mortgagor, omits to insert a clause of redemption, the court, in the exercise of their acknowledged and undisputed power to relieve against fraud, correct mistakes, and make written instruments conform to the intent of the parties, as they should have been made in the first place, will inquire into the transaction, and grant such relief as may be necessary. In the case *Cottrill* v. *Purchase*, Talbot's Ca. 60, the question arose principally upon the construction of a deed. The first deed between the parties had been exe-

*Conner*
*v.*
*Chase et al.*

*March,*
*1843.*

cuted, and admitted to be a mortgage, I should think proba-
bly by a deed and defeasance, as it is said *those deeds* were
cancelled, and the Lord Chancellor expresses himself deci-
dedly against that mode of making a mortgage. The deeds
first executed were cancelled, and, some time after, another
deed, in consideration of a further sum, was executed, which
was absolute, but with a covenant in it which, it appears
to me, showed very clearly that an absolute purchase was not
intended. The master of the rolls was, however, of opinion,
from the evidence, that an absolute purchase was intended,
and dismissed the bill brought for redemption; and the chan-
cellor affirmed his decree. I do not find in this case, any au-
thority to extend the principle of admitting parol testimony
in the case of a mortgage, further than it was admitted in the
case of *Montacute* v. *Maxwell*, before mentioned. On the
authority of these cases, *and on the admissions in the answer
of the defendants,* Chancellor Kent, in the case of *Strong* v.
*Stewart,* 1 Johns. Ch. R. 167, admitted a party to redeem,
although the conveyance was absolute in its terms. But in
the case of *Marks* v. *Pell,* 1 Johns. Ch. R. 594, the same
learned chancellor, while he admits that it is competent to
show by parol proof, that a deed was taken as a mortgage, and
that the defeasance was destroyed by fraud or mistake, re-
fused to decree a redemption when the grantee was in pos-
session, on proof of the confessions of the party, observing
that the acknowledgments of the party as to title to real
property, are generally a dangerous species of evidence, as it
would counteract the beneficial purpose of the statute of
frauds. In the case of *Day* v. *Dunham,* found in 2 Johns.
Ch. R. 182, and 15 Johns. R. 555, this question was in no
way involved. A *defeasance was executed subsequently to
the deed,* but was unrecorded; the point on which the court
of errors and court of chancery differed, was whether the no-
tice contained in the record of the absolute deed should be
considered as a notice of the mortgage under the registry act
of New York. I do not perceive in the subsequent cases of
*James* v. *Johnson,* 6 Johns. Ch. R. 417, or *Henry* v. *Davis,*
7 Johns. Ch. R. 40, that, in the absence of any fraud, and
without any proof in writing, and without any admission in
an answer, a court of chancery would decree an absolute
deed a mortgage, and let the grantees in to redeem, merely on

parol proof that such was the intention of the parties. That subsequent decisions in New York have extended the principle much further, I have already noticed, but Nelson, J., in *Patchin* v. *Pease,* 12 Wendell, 61, 64, thought that parol proof in such a case, was proper only in case where there was fraud in the grantee.

In this state, in the case of *Williams & Putnam* v. *Parish,* decided in Orange county, it was decided, that when security was given by a deed absolute, if there was no ground to impute actual fraud, such conveyance might be good. Yet in the case *Gibson* v. *Seymour,* 3 Vt. R. 565, they considered taking security in that way strong evidence of fraud. In the case of *Wright* v. *Bates et al.,* 13 Vt. R. 341, my decision as chancellor, and afterwards in this court where the cause came by appeal, was founded entirely on the belief that the writing executed by Bates, and the fact of Wright remaining in possessession, paying *interest* instead of rent, was sufficient evidence to show that the parties stood as mortgagor and mortgagee, that the contract was not, as contended for by the defendants, a conditional contract of sale. The case of *Campbell* v. *Worthington,* 6 Vt. R. 448, was decided on the construction of the contract between Campbell and the testator Watrous.

In the present case, the solicitor who framed the bill appears to have been fully aware of the principle of law in relation to this subject, as recognized in the court of chancery in Great Britain, and has drawn his bill with a view of bringing his case within these principles. He charges that Chase agreed to give him a *written* defeasance, and also that Granger agreed to give a written defeasance. It is sufficient to say there is no proof to establish that fact, either against them or against the Kinastons, except the answer of Chase. This answer, though artfully drawn, and evidently intended to affect the other defendants, is no evidence against them, as he has long since ceased to have any interest in the land, and no admissions by him, Granger or Miles, can affect any others but themselves. I apprehend, therefore, that the testimony, in this case, of the statements made by persons in the presence of witnesses, attended with the uncertainty whether the witnesses heard or recollect, or can now detail, the expressions made use of, is wholly inadmissible to change the character of the conveyance made by the orator to Chase, or

by Chase to Granger; and although the court might rest satisfied in saying that the proof is not sufficient to establish the fact which the orator wished to establish, yet I deemed it proper to investigate the principle on which the orator relies, that from our omission to say any thing on the subject it might not be considered as the doctrine of the court, that a party who has conveyed land or other property by an absolute deed, is at liberty to come into a court of equity and, by proof of confessions, declarations and admissions of the other party, and that kind of hearsay and unsatisfactory evidence, claim to be treated as a mortgagor, and call his grantee to account for rents and profits.

But if the law on this point were otherwise, and Conner, the orator, could claim, as against either Chase or Granger, to be considered as a mortgagor, he would have no such claim against either Miles or the Kinastons. Granger had both the legal title and possession, and could transfer both to a purchaser. Conner's claim was only on a parol contract. It is the object of our recording system that the titles to real estate should appear on record, and a person desirous of purchasing, finding from the records that the person, in whom the apparent title is, has the actual possession, ought not to be affected by any disputes between the owner and any third person, or any equitable claims between them, unless he purchases intending to defeat those equitable claims; otherwise there could be no valid sale or transfer, until one or the other should think proper to settle their disputes by a judicial determination. The rule laid down by the master of the rolls in *Tolland* v. *Stainbridge*, 3 Vesey, Jr., 478, is, that in order to let in a prior deed unrecorded against a subsequent deed recorded, the person who registers the subsequent deed must have known the situation of the persons having the prior deed, and knowing that, registered in order to defraud them of that title which he knew at the time was in them. This was in accordance with the principle previously laid down by Lord Hardwick, in *Hine* v. *Dodd*, 2 Atk. 275; and this rule will apply to the present case, where it is not insisted that the defendants had any notice of a prior, unrecorded deed, or purchased of one not having the legal title, but only that they had notice of a parol agreement or contract.

The court discover no evidence of any fraudulent intent

to deprive the orator of any legal or equitable right in either Miles or the Kinastons. It is said they had such notice as should have put them on inquiry in relation to the estate of Conner; and it is undoubtedly true, as a general principle, that when a man has sufficient information to lead him to a fact, he should be deemed conusant of it. If the purchasers had pursued the inquiry, and had had access to all the testimony which has been afforded us in this case, unless they were more fortunate than I have been, they would have been at a loss to discover what was the real understanding and agreement between Granger and Conner,—whether it was in relation to a sale by Granger to Conner on certain terms, or whether it was to give Conner a right of redemption, for we learn that they disagreed as to the terms of it in 1824, and ever after that time, Granger repudiated any claim of Conner, and forbade him from having any thing to do with it. There was nothing therefore, to put the defendant, Miles, or the Kinastons, on inquiry, nor is there satisfactory evidence that Conner then had any right in the mill, and there is no evidence that the defendants purchased with any intent to defraud him of any right he pretended to have; and, moreover, if they had full knowledge of all that is here pretended by the orator, they might safely purchase, according to the principle declared in *Cordwell* v. *Mackerell*, Amb. 515, as it was not a claim which they were bound to notice.

In the third place, the claim of the orator is evidently a stale claim, whatever right he had under any contract, existed as early as the spring of 1824, for at that time, Granger set him at defiance and forbid his going into the mill. This bill was not brought until nearly twelve years from that time. All remedy at law on his debt or contract against Granger, if he had any, was barred by the statute of limitations, and although a sufficient time has not elapsed to bar an undoubted right of redemption, yet this period of time affords very strong evidence against the claim now set up by the orator. Granger, it is stated in the bill, has now gone out of the country. A very different complexion might have been given to this transaction, if a suit, either at law or in equity, had been instituted while Granger was in the country. Length of time short of the period in which a redemption is barred, was much relied on in the case of *Cotterell* v. *Purchase*, by Lord

Chancellor Talbot, to refuse the application of the plaintiff for a redemption. Whether any thing is or was due from Conner to Granger; whether the mill was or was not more than a compensation to Granger, for what was due him from Conner, and whether it was intended as a compensation, can only be ascertained in a suit between them. Granger assigned no claim against Conner to Miles. It would be highly inequitable to permit this subject, at this distance of time, to be litigated and inquired into, in a suit in equity between Conner and the Kinastons.

CALEDONIA,
*March,*
1843.

Conner
*v.*
Chase *et al.*

I have remarked that there is no evidence that Miles had any knowledge of any equitable claim of Conner, except his answer, and that this was no evidence against the present holders of the estate. It is undoubtedly true that, if Miles had no notice of any equitable claim to the estate he purchased of Granger, the estate was vested in him, and he might sell to the Kinastons and convey a good title to them, notwithstanding they had notice of the orator's claim. Hence it becomes necessary to prove this knowledge in Miles. Miles was not examined as a witness, but this orator relies on his answer which, like that of Chase, is very artfully drawn, and, intended to affect others besides himself, is hardly deserving to be treated as an answer in chancery—and relies on the authority of the case, *Walley* v. *Walley,* 1 Vern. 484. There is however, a very material distinction between the cases. The defendants deny any trust in Miles, or any knowledge, either in themselves or Miles, that Granger held the land by way of security, trust or mortgage. If a trust had been proved by legitimate testimony, and it had also been proved that the Kinastons had full notice of the trust in Granger, and they relied wholly on the want of notice of the trust in Miles, some of the remarks made in the case of *Walley* v *Walley* might have been applicable. Though it is to be remarked that it was expressly decided in that case, that the answer of ————————, one of the defendants, could not be read in evidence against the other defendant, the decision in the case will not warrant the position that the answer of Miles can be evidence in this case, that the estate received by him of Granger and conveyed to the Kinastons was encumbered by any trust, and the answer does not disclose any such notice as would affect his title from Granger or that of

CALEDONIA, his grantees. This point however, is comparatively unimpor-
*March,* tant in the decision of this case.
1843.
_____
Conner       In every point of view in which we consider this case, we
*v.* think that neither the law nor the evidence show any ground
Chase *et al.* of equity in the orator against the Kinastons. The decree
of the chancellor, so far as it dismissed them with their costs,
is affirmed.