James Baxter *v.* Solomon Willey.

Orange,
*March*,
1837.

The sale and conveyance of real estate, in payment of a pre-existing debt, with a simple right of repurchase on the part of the debtor, is valid, and is not a mortgage, even in equity.

But, in such contract, it is essential that the debt be extinguished absolutely, *in presenti.*

If the object of the contract be to *secure* the payment of the debt, and not to *extinguish* it, except upon the happening of some subsequent event, or the default of the debtor to pay by a given day, the transaction is a mortgage, and no form of words will enable the parties to foreclose the debtor's equity of redemption.

If such contract be made in a foreign country, the creditor will not be permitted to pursue his debt here, unless it is shown, that, by the law of the place of contract, the debtor will be considered as having an equity of redemption in the land.

At law, the conveyance of land, agreed to be received in payment of a pre-existing debt, although the securities are not surrendered, there being no defeasance under seal, passes the absolute title to the estate.

This was an action of assumpsit upon a promissary note, submitted to the county court upon the following case stated :

"In this case, it is agreed by the parties, that the defendant "executed to the plaintiff the note declared on, at the time it "bears date, and that, at the same time, upon a conference be-"tween them, in relation to their concerns, both parties then be-"ing in Lower Canada, this, with two smaller notes, then due "to plaintiff from defendant, was cast, and the amount due on "all three ascertained ;—that, at the same time, defendant "gave to plaintiff a deed of a piece of land in Canada, but did "not take up the notes ; that plaintiff then gave a writing to de-"fendant, under his hand, stating that defendant had deeded to "plaintiff a piece of land, in payment of three several notes, "which notes were described in said writing, one of which was "the note now in suit. But said writing further stated that "plaintiff agreed, if defendant would pay him such sum as was "then found due, as above, upon said three notes and interest, "at the end of two years, plaintiff would redeed said land to "defendant. Said writing was afterwards sold to one Berry, "for $35, and said Berry afterwards sold said writing to a third "person, and it is since lost. The defendant was to hold pos-"session of the said land, till the end of the two years. And "it is further agreed, if the court consider the evidence admissi-"ble, the said Berry will testify, that, in 1832, he called on

" plaintiff to make inquiry about the land above deeded, by de-
" fendant to plaintiff, and, in a conversation then had with
" plaintiff about the notes and land, plaintiff told said Berry
" that he had received his pay for the notes of defendant, in land,
" and that nothing was due from defendant to him, on said notes.
" Now if the court, on this statement of facts, shall be of opin-
" ion that the transaction, above stated, should have the effect
" of a mortgage, judgment is to be rendered for the plain-
" tiff, for the amount due on this note and cost.  But if the
" court should be of opinion, on the whole case, that such was ·
" not the legal effect of said transaction, and that said notes
" have been paid;—then judgment is to be entered for defen-
" dant for his costs."

The County court rendered judgment for defendant, plaintiff
excepted to that decision, and the case came here for revision.

*Elijah Farr* and *Wm. Upham, for plaintiff.*

The conveyance from Willey to Baxter was in the nature of
mortgage to secure Baxter's debt against Willey, and the par-
ties so intended it.

A conveyance of real estate, intended by the parties merely
as security for a debt, though absolute on the face of it, is a
mortgage; and any agreement, on a subsequent event, to change
its nature, and prevent the equity of redemption, is void. *Henry*
v. *Davis,* 7 Johns. Ch. Rep. 40.  *Bloodgood* v. *Zeily,* 2
Caines' Cases, 124.  *James* v. *Johnson,* 6 Johns. Ch. Rep.
417. *Hughes et al.* v. *Edwards et ux,* 9 Wheat. 489. *Thomp-
son* v. *Devenport,* 1 Wash. 125. *Kelleran* v. *Brown,* 4 Mass.
Rep. 443. *Young's administrator* v. *Purvises,* 2 Hayward,
26. 3 Desau. 114. *Clark* v. *Henry,* 2 Cowen's Rep. 324.
*Wheeler* v. *Swartz,* 1 Yeates' Rep. 584.

*A. Underwood, for defendant.*

How a court of equity in Canada, (if there be one,) might
view the transaction, as set forth in the case stated, it is unne-
cessary to inquire, as the court must decide the question raised,
according to the established rules of law in this State; and the
question is, did the *parties intend* the deed of the land a *pay-
ment* of the notes, reserving to defendant the privilege to *re-pur-
chase,* in a given time, at a given price; or did they *intend* it as
a mere *security* for the payment of the notes?

In Kent's Com. 4th vol. 142, it is said, " in *equity* the char-
acter of the conveyance is determined by the *clear and certain in-*

Orange,
March,
1837.

Baxter
v.
Willey.

*tention of the parties,* and such intent will be carried into effect, whether it be a security for re-payment of money, or a contract for re-purchase."

In this case, the defendant insists, that the parties intended the deed as a payment of the notes; and it is believed, that even a *court of equity* could come to no other conclusion upon the facts; much less a court of law. No other intent can be gathered, by any legal or equitable construction of the writing, given by plaintiff to defendant.

The plaintiff acknowledges the receipt of the deed, not as security for the payment of the notes, but in payment of the notes, (describing them.) The language is unequivocal, explicit and not to be misunderstood. Why the notes were not taken up does not appear. They might have been lost, mislaid, or left through negligence or mistake. It was sufficient for defendant, however, that he held plaintiff's discharge or acknowledgment of payment. The writing is not, that plaintiff would re-deed *on payment of the notes and interest* in two years, but on the payment of *such sum* ; or rather, *if* the defendant would pay the plaintiff—not the *notes*—but, *such sum* as was found to be due on the notes, at that time, with interest in two years, then, plaintiff agreed to re-deed. It was not binding on defendant to re-purchase, but left optional. The time was limited to the *end of two years,* and it is manifest that both parties understood and meant, that, unless defendant elected to re-purchase, by that time, the land was gone forever in *payment* and without right of redemption. Plaintiff so understood it, and if his subsequent declaration to Berry is to be admitted as evidence—and which would be admissible in a court of equity, ( *Campbell* v. *Worthington,* 6 Vt. Rep. 448,) all possibility of doubt is removed.

The writing is to be interpreted according to established rules of construction in courts of law. The words, made use of, are to be understood according to their common acceptation. If plaintiff has received land in payment, it would be doing violence to language, to say it meant *security* for payment. The court would seem to be—not carrying into effect the *intent* of the parties—but making a different contract, by giving the word any other than its obvious meaning.

It appears that *there was no loaning of money at the time,* by plaintiff to defendant, but a pre-existing debt. The defendant proposes to pay in land, with the additional agreement,

however, that, *if* at the end of two years, he should elect to re-purchase at a given and stipulated price, he should have the privilege so to do ;—the plaintiff assented to this, took the deed and gave the writing to that effect. Had the parties designed the transaction a mere security, the writing would have been framed accordingly. The plaintiff, instead of saying he had received the deed in *payment,* would have acknowledged the receipt of the deed as *security* for the payment of the notes.

The opinion of the court was delivered by

REDFIELD, J. The contract here sued was made within the province of Lower Canada, and was there to have been performed. No principle is better established, perhaps, than that the nature, construction, validity, performance, release and discharge of a contract is to be determined by the *lex loci contractûs,* unless the contract is made with reference to performance in another place, in which case those incidents will be subject to the law of the place of performance.

The provinces of Canada, it is well known, although dependencies of the British Crown, are not governed by British laws, so far as civil proceedings are concerned. It was one of the conditions of the surrender of those provinces by the French, that they should be permitted to enjoy, in perpetuity, French law, unless repealed or modified by their own legislature. This has not been done, except to a very limited extent. The French civil law, as it existed at the time of the cession, still obtains there, in all its original rigor and rudeness and with all its inequalities and imperfections. It is the *coutume de Paris,* without any of the qualifications, and manifest meliorations and improvements of the code Napoleon. It is, in short, the civil law of Rome, substantially as found in the Pandects. They have no courts of chancery and their courts of law exercise equity powers only to a very limited extent, and this chiefly in cases where such powers have been conferred by express statutes. These statutes are almost all limited to some short term of years, and, in the present perilous times, the chance of their being renewed is not a little precarious. Hence, this case must be here decided, so as to make the parties safe. And this safety, must of necessity, be in some degree measured by the laws, and the constitution and manner of proceeding in the courts of Canada. For the land being there situated, the *lex rei sitæ* must determine the title to it. The contract, in terms, is an absolute conveyance of the land

Orange,
March,
1837.

Baxter
v.
Willey

to the plaintiff, *"in payment"* of this note, with the right of defendant to repurchase, upon payment of the amount of the price agreed, and the interest. This note, with others, was due plaintiff from defendant, sometime previous to the conveyance of the land, and was not surrendered by plaintiff, but retained. This, with other circumstances, might enable a court of equity to treat the transaction as substantially a mortgage, and allow the defendant an equity of redemption. And if so, the plaintiff would be entitled to sue upon his notes. If the land were situated here, we should probably be inclined so to treat the case.

For if the real object and intention of the parties was to *secure* the payment of the debt, and not to *extinguish* it, no form of words will enable them, upon the happening of any subsequent event, or any default on the part of the debtor, to foreclose his equity of redemption, but with us, any such contract is absolutely void. This is, indeed, a principle of chancery jurisdiction, and not of courts of law, as such. *Hughs* v. *Edwards*, 9 Wheaton, 489. *Henry* v. *Davis*, 7 Johns. Ch. Rep. 40. It is well settled that a court of equity will treat every contract for the security of a debt, by conveyance of real estate, although not evidenced by any written defeasance, but resting wholly in parol, as a mortgage. *Campbell* v. *Worthington*, 6 Vt. T. 448. But, at law, such conveyance vests the absolute title in the grantee, unless the defeasance is under seal. *Kelleran* v. *Brown*, 4 Mass. R. 443. And if, on a sale of land, there be a *bona fide* condition of repurchase or avoidance of the sale, it is valid, but if the debt be not *extinguished in the present tense*, it will be treated in equity as a mortgage. Ibid. *Conway's Executors et al.* v. *Alexander*, 7 Cranch. 218.

If the land in question, in the present case, were within our own jurisdiction, so that the defendant's equity of redemption could be secured to him, by our sustaining this suit, we should, doubtless, be inclined to do so. But it must, *ex necessitate*, pertain to every jurisdiction, to determine exclusively all questions pertaining to the title of real estate, and unless we could feel sure that the courts in Canada will permit the defendant to hold an equity of redemption in the land conveyed to plaintiff, it would be unjust, in the last degree, to permit the plaintiff here to take judgment, which might result in compelling the defendant to pay the price of the land, without the possibility of ever reclaiming the same.

*within such jurisdiction*

We have no doubt that, in Canada, this would' be treated as an absolute conveyance in payment of the debt, and that defendant had, at most, a right of repurchase, which was lost by lapse of time. And had the transaction occurred here and the notes not been retained by plaintiff, we should so view it.

The judgment of the County Court is, therefore, affirmed.