JOSEPH A. WING, *Executor of* WILLIAM P. BRIGGS, *v.* AMOS B. COOPER, ROBERT RUSSELL, JOSEPH WHIPPLE, ROLLA GLEASON, LORENZO WHITCOMB AND HENRY A. HODGES.*

[IN CHANCERY.]

*Mortgage. Power of Sale. Conditional Sale. Evidence. Parties.*

The deed and bond in question in the present case are held to have the effect of a security in the nature of a mortgage, to which the right of redemption attaches; and this right cannot be waived by agreement.

Parol evidence is not admissible to show that an instrument on its face a mortgage was intended by the parties to operate as a conditional sale, or to turn the real transaction into one of a different character.

A power of sale in a mortgage is in practice unusual if not unknown in this state, and ought not to be recognized in any case unless conveyed by an express grant and in clear and explicit-terms.

Gleason, being liable to an accounting, was properly joined as a party defendant, and even if not, it was apparent on the bill itself, and the objection, if not made by demurrer to the bill or in the answer, should be considered as waived and as coming too late when made at the hearing.

APPEAL FROM CHANCERY. The facts are sufficiently stated in the opinion of the court. At the March Term, 1860, ALDIS, Ch., the court of chancery decreed that the bill be dismissed with costs. This decree was upon a full hearing of the case, but was *strictly pro forma* and made to enable the parties to have a decision in the supreme

---

* This case was argued at the August Terms, Washington county, 1860 and 1861, and reargued at the General Term, November, 1863, and the opinion delivered at the present term,

court, before incurring the delay and expense of an accounting. Appeal by the orator.

*J. A. Wing*, for the orator.

1. Did the deed and bond of the 8th or 9th of January, 1853, constitute a mortgage? If so, it is still a mortgage, and the orator has a right to redeem. *French* v. *Sturtevant*, 8 Greenleaf, 246, (read from page 250, which shows the difference between common law and the statutes of Maine and Mass.)

2. The literal definition of mortgage, as its name imports, is " dead pledge," but practically a security for the performance of some act, or the payment of some debt. *Montgomery* v. *Chadwick*, 7 Clark's, Iowa, 114.

3. No particular form of words is necessary to constitute a mortgage. The great question in equity is, what did the parties intend—what was the agreement upon which their minds met? *Oldham* v. *Hully*, 2 J. J. Marshall, 113.

4. Both bonds speak of indemnity and security, and of the obligors' putting no impediment in the way of the orator's redeeming;— all which terms are inconsistent with any contract but a mortgage. *Baxter* v. *Child*, 39 Maine, 110 ; *Waters* v. *Randall*, 6 Met. 879 ; 4 Kent's Com. 142 ; *Hughes* v. *Edward*, 9 Wheat. 489 ; *Hickok* v. *Low*, 10 California, 197, read 209 and 210 ; *Rutborgh* v. *Ludwich*, 31 Penn. State R., 131, (read pages 138 and 139.)

5. There was no discharge of the debt at the time of the execution of the papers. The bond was therefore what it purports to be, security and indemnity, and not a sale with a right of redemption.

It therefore follows that the right to redeem is inseparably connected with it, and any agreement to prevent a redemption is void. 2 Story's Equity, § 1019, and cases there cited ; 5 Gray, (Mass.) 505 ; *Bailey* v. *Bailey*, *Adm'r*, 2 John. Ch. 30 ; *Holridge* v. *Gillipsie*, 22 Penn. State R. 171 ; *Wood* v. *Willard*, 4 Kent. 143 ; *Baxter* v. *Child & wife*, 39 Maine, 110 ; *Catlin* v. *Chittenden & Co.*, Bray. 168 ; *Lee* v. *Evans*, 8 Cal. 424 ; *Campbell* v. *Worthington*, 6 Vt. 448 ; *Baxter* v. *Willey*, 9 Vt. 276 ; *Henry* v. *Davis*, 7 Johns. Ch. 40. See also *Wright* v. *Bates & Niles*, 13 Vt. 341 ; *Hyndman* v. *Hyndman*, 19 Vt. 9.

6. If the writings import a mortgage, parol testimony cannot be

admitted to vary them. *Bailey* v. *Bailey, Adm'r,* 5 Gray, 505 ; *Wood* v. *Wallace,* 22 Penn. State R. 171 ; 9 Vt. 276.

7. Was Rolla Gleason properly made a party to the bill?

8. The orator had no right under the bond to call the fund out of the hands of Gleason ; it belonged to the obligors, and of its amount the orator could know nothing without discovery. Hence the orator had the right, and it was his duty, (the obligors neglecting,) to compel a discovery of the amount, and where the fund was. *McConnell* v. *McConnell,* 11 Vt. 291 ; *Cato* v. *Early,* 2 Stuart, 214, (cited 2 U. S. E. Digest, 436, §§ 544–543 ;) *Crambe* v. *Demming,* 7 Cowen, 387 ; *Delaware* v. *Everston,* 1 Paige, 431, (cited 2 U. S. Dig. 437, § 580 ; 2 U. S. E. Dig. 434, § 496 ;) *Cadwell* v. *Taggart,* 4 Peters, 190 ; *West* v. *Randall,* 2 Mason, 181 ; *Smith* v. *Rogers,* 1 Stewart & Port. 307, (cited U. S. Dig. 436, § 542 ;) *Sanborn* v. *Kittredge et al.,* 20 Vt. 632 ; *Wetter* v. *Arnott,* 3 English, 67, (cited 9 U. S. Dig. 156, §§ 42–43 ;) 4 Gratt. 270, (cited 10 U. S. D. 185, § 589 ;) 2 Strobb. E. 262, (cited 10 U. S. Dig. 174, § 360 ;) *Carey* v. *Hoxie,* 11 Greer, 645, (cited 14 U. S. Dig. 230, § 398 *et seq.;*) *Gilman* v. *Johnson,* 14 Greer, 683, (cited 14 U. S. Dig. 230, § 405 ;) *Flagg* v. *Mason,* 2 Sumner, 437.

9. It would be impossible, therefore, for the court to make an equitable adjustment of all the matters, unless Gleason is a party to this bill. *First Con. Soc. in Raynham,* 23 Pick. 148 ; *Executors of Brashur* v. *Van Cortland,* 2 Johns. Ch. 246 ; *Joslyn* v. *Hamilton,* 7 Ala. 362, (cited 2 U. S. E. D. 438, § 609 ;) *Cummings* v. *Maynard,* 11 Paige, 596 ; *Day* v. *Cummings,* 19 Vt. 469 ; *Hartford* v. *Chipman,* 21 Conn. 488.

*T. P. Redfield* and *Dillingham & Durant,* for the defendants.

The relation between the parties was not that of mortgagor and mortgagee.

From the relation of the parties, and the whole scope and tenor of the bond, it is obvious that the contract was not a mortgage, but simply a right to re-purchase by reimbursing the defendants what they should be compelled to pay, in order to protect the title for the term of three years.

A *mortgage* is collateral to, and an *incident* of, some *debt ;* that relation implies *mutual rights* and *duties,*

There was no debt which the orator *owed* the defendants, which is the true criterion of a mortgage.

If there be a loan or antecedent debt, and the conveyance do not extinguish the debt, but is *collateral* to, and as a security for the debt, then it is a mortgage, otherwise it is not.  2 Bouvier's Dictionary, 179 ; *Hicks* v. *Hicks & Morris,* 5 Gill & Johns. 75—opinion of Blanch, Chancellor ; Chitty's Eq. Dig. 1432, § 6, and cases there cited ; 2 Edw. Ch. R. 138 ; *Holmes* v. *Grant,* 8 Paige, 243, Walworth, Chancellor ; *Glover* v. *Paine,* 19 Wend. 518 ; *Sweetland* v. *Sweetland,* 3 Mich. 482 ; *Conway's Executors* v. *Alexander,* 2 Curtis, U. S. R. 516.

The orator's *bond* expressly provides that he may reimburse and redeem, if he *chooses.*

The orator had the right to re-purchase within three years, but there was no *duty* upon the orator ; nor was there a subsisting debt which the defendants could enforce.

In *Goodman* v. *Grierson,* 2 B. & B. 274, Lord MANNERS says : " The fair criterion by which to determine whether a *deed* be a *mortgage* or not, is by asking, were the remedies *mutual* and *reciprocal,* and has the grantee all the remedies to which the grantor is entitled ?"

This criterion is affirmed by the authorities quoted above.  See also *Henry* v. *Bell,* 5 Vt. 393.

The terms " redeem " and " re-purchase " are synonymous.  2 Edw. Ch. 138.

*a.*  The *express* provision in the bond, that the defendants *shall not sell within three years,* is, by a well admitted rule of construction, an *implied authority to sell* after the limitation expires.

If the said Briggs shall pay or offer to pay within the three years, " then the defendants shall re-deed," if otherwise, " then they shall hold the same as *their own.*"

*Expressio unius exclusio alterius.*

II.  Parol evidence is admissible to show the understanding of the parties, and when the intent is shown the decree will be in accordance with it.  *Conway, Ex.,* v. *Alexander,* 7 Cranch, 218 ; Leading Cases in Equity, 3 vol. 416–417 ; *Flagg* v. *Mann,* 14 Pick. 467 ; Hilliard on Real Property, 401, § 42 ; Fonb. Eq. 472—note ; *Camp-*

*bell* v. *Worthington*, 6 Vt. 448; *Lowry* v. *Adams*, 22 Vt. 160; 13 Peters, 89; 2 Freeman, 70–86, 144, 153; 1 Vernon, 191, 268; 1 Forrest, 62; Selwyn's Cases in Chancery, 10; 2 Chan. Rep. 275; 19 Vesey, Jr., 412; 4 Sch. & Lef. 373; *Eiland* v. *Rudford*, 7 Alabama, 724; *Hicks* v. *Hicks & Morris*, 5 Gill & Johnson, 75; *Russell* v. *Southard et al.*, 12 Howard, 139.

If the orator then understood it as he *now* claims it, as constituting a mortgage, he is estopped from setting it up as a mortgage, for he proclaimed, after writing the bond and reading portions of it, and before the defendants would sign it, that it could not be so construed. See *Strong* v. *Ellsworth*, 26 Vt 366; 1 Hilliard on Real Property, 425, § 43; 1 Story's Equity, § 134—note 3.

To enforce it now would be against equity. *Cathcart* v. *Robinson*, 4 Peters, 264; 2 Story's Equity, 769, note and cases cited; *Galt* v. *Johnson*, 9 Alabama, 151.

We submit that in any event the defendants had the *power* and right to sell. See Hill on Trustees, 476. And with them there was a *necessity* to do so And when nearly eight years have elapsed, and neither Briggs nor his *representative*—before or since the bill was filed—has "offered to reimburse," is there a case that calls for or that will warrant a court of equity to overturn the *title* of the purchaser and institute another chapter of lawsuits upon the covenants in the defendants' deed to Whitcomb?

KELLOGG, J. On the 20th of September, 1851, the orator, William P. Briggs, now deceased, by whom this suit was originally commenced, and in whose right it is now prosecuted by his executor, was indebted to Joseph Reed of Montpelier on two promissory notes, both of which were signed by him, and one of which was signed by the defendants Cooper, Russell, and Whipple as his sureties, and the other of which was signed by Ransom Jones as his surety. Both of these notes had then been over due for several years. There was then due for principal and interest on the note signed by the defendants Cooper, Russell, and Whipple as sureties a sum exceeding twenty-one hundred dollars, and on the note signed by Jones as surety a sum exceeding three hundred dollars. At the same time, Briggs was indebted to the National Life Insurance Company at Montpelier on another note which was signed by him and also by the defendants,

Russell and Whipple and Saul Bishop and Merrill Fellows as his sureties, on which there was then due for principal and interest about eleven hundred dollars, and this note also had been for some time over due. After the defendants Cooper, Russell, and Whipple became sureties for Briggs on the note to Joseph Reed above mentioned or on the debt represented by that note, Briggs and one Lyman Field, who was originally a principal with the said Briggs on the said debt, executed to them a quit-claim deed of certain' lands' in the town of Worcester, or of an interest or share therein,—which deed, though absolute in form, was intended and understood by the parties thereto to be a security and indemnity to the grantees named therein for or on account of their liability as sureties as above stated. The land conveyed by this deed, though numbering many hundred acres, was wild and uncultivated, and of uncertain value. Suits were commenced on the 20th of September, 1851, or about that time, by writs returnable to the Washington County Court, on the notes above mentioned, by the payees against the makers of the same respectively, and the writs in the said suits having been delivered to the defendant Gleason, who was then a deputy sheriff of the county of Chittenden, for service, he attached thereon all the personal property of Briggs which was subject to attachment, and also his real estate, including the home farm, on which he then lived, situated in the town of Richmond. These attachments were made on the 22d of September, 1851,—that in favor of the Life Insurance Company being the first in priority,—and all of the attachments on the personal property were subject to the lien of certain attachments on writs against Briggs before that time made by Gleason as deputy sheriff, and of certain executions against Briggs which Gleason, as deputy sheriff, then held in his hands for collection, and which he had levied on the same property. The personal property so attached, consisted of a large number of cows, young cattle, oxen, horses, and the hay, grain in the straw, and other farm produce on the farm of Briggs, and other articles. On the 13th of November, 1851, which was before the return of the writs in favor of Mr. Reed and the Life Insurance Company and while those writs were still in Gleason's hands, the cows and other stock which had been attached on these writs as above mentioned, were sold by Gleason, with the consent in writing of Briggs, and the

proceeds of the sales, amounting to about one thousand dollars, were received by Gleason. The writs in favor of the Life Insurance Company and Mr. Reed were duly returned and entered in court, and judgments were rendered in those suits against the defendants therein respectively in the county court for Washington county at the March Term, 1852, and executions on these judgments were issued and delivered to Gleason as deputy sheriff for levy and collection. On the 26th of April, 1852, while holding these executions in his hands, Gleason sold at public auction the residue then remaining of the personal property which had been attached as above stated, but the executions were returned unsatisfied, and *alias* executions were subsequently issued on each of the three judgments, which were also delivered to Gleason as deputy sheriff to levy. These *alias* executions were levied by Gleason on the home farm of Briggs in Richmond, or on the equity of redemption of Briggs in that farm,—the two executions in favor of Mr. Reed being levied in July, 1852, and the execution in favor of the Life Insurance Company being levied in August, 1852. These levies were in fact made for the benefit of the sureties of Briggs on the notes included in the respective judgments on which the executions were issued, and the interest of the execution creditors in these levies respectively was subsequently duly conveyed to the defendant Hodges, who held the same for the benefit of the sureties. At the time when these levies were made, the premises levied upon were subject to the incumbrance of a mortgage deed executed by Briggs on the 6th of August, 1850, to one George Bowland of Boston, for the benefit of Thomas Reed of Montpelier, to secure the payment of a note for five thousand dollars with interest thereon annually. On the 8th of January, 1853, which was a very few days before the expiration of the time allowed by statute for the redemption of the premises from the levies above mentioned, Briggs and the defendants Cooper, Russell, and Whipple, after some preliminary negotiation, entered into an agreement which was put in writing, and consisted of a quit-claim deed of that date executed by Briggs to these defendants, conveying the land referred to and included in these levies, and a bond in the penal sum of fifteen thousand dollars of the same date executed by them to Briggs. The whole controversy in this case depends mainly on the effect which

shall be given to the provisions of this bond.   The present suit was
commenced by Briggs in his life-time and is now since his decease
prosecuted by his executor, on the claim that this deed and bond,
taken together, created the relation of mortgagor and mortgagees
between himself and these defendants, and that he, as mortgagor,
was entitled to redeem the land so conveyed to the defendants from
the claims which they were properly entitled to assert under the con-
ditions of the bond as incumbrances upon the land.   The orator's bill
is in substance a bill to redeem this alleged mortgage, and this suit
was commenced on the 27th of August, 1856.

No question is made by these defendants that a bond was executed
by them to Briggs at the time of the execution of his quit-claim
deed to them ; but they claim that the bond presented by him as the
bond executed by them to him on that occasion is spurious and was
forged by him, and that another bond, a copy of which is annexed to
the answer of Whipple, was the true and only bond which was ever
at any time executed by them to him in respect to the land conveyed
by his deed to them.   The bitter and excited feelings which are ap-
parent upon the bill, answers, and testimony in this case are to be
attributed in a large measure to the allegations on the part of the
defendants in respect to the genuineness of the instrument presented
by Briggs as the true bond executed to him by them, and to the pos-
itive character of the issue made by them on that point.   The testi-
mony in respect to the question as to which of the bonds was the
true bond does not leave the subject free from mystery or doubt, but
our examination of the testimony, and particularly of the instrument
which is sought to be impeached, impresses us with the belief that
the preponderance is in favor of the claim of Briggs and of the gen-
uineness of the bond presented by him.   There is no doubt that the
signatures of Cooper, Russell, and Whipple to the bond presented by
Briggs are genuine, and, in fact, they are admitted so to be by each
of these defendants in their testimony.   The genuineness of the sig-
natures being established, the natural and fair presumption would be
that the instrument to which those signatures were subscribed was
itself genuine, and the evidence on the part of the defendants fails to
satisfy us that this presumption is not well founded.   We do not dis-
cover any substantial difference between the provisions of the one

bond and those of the other, so far as they affect the character of the relations between Briggs and these defendants, or the general character of either instrument, and we regard the same reason or ground of decision as applicable to both alike.

It being settled that the bond presented by Briggs is a genuine and valid instrument, we proceed to consider its terms and effect. In the condition of the bond it is stated *inter alia*, after reciting the execution of the quit-claim deed from Briggs to Cooper, Russell, and Whipple, that they, Cooper, Russell, and Whipple, have agreed with Briggs to pay the debt and judgment in favor of Mr. Reed on which they were sureties as above stated " to the said Reed, and the intent of the said deed is to indemnify and save harmless the said Cooper, Russell, and Whipple for such payment, and for the payment or redemption of two other levies upon the lands of the said Briggs,"— referring to and describing the levy in favor of Mr. Reed on his execution against Briggs and Ransom Jones, and the levy on the execution in favor of the Life Insurance Company, already mentioned,— " and this deed is to be indemnity and security in addition to the security of the lands of the said Briggs in the town of Worcester, which are and have long been in the hands of the said Cooper, Russell, and Whipple as security for the said Reed debt." Then follow provisions in respect to the leasing of the land by Cooper, Russell, and Whipple for a period not exceeding three years from the 1st of April, 1853, and the application of the rents and profits, over and above taxes and necessary repairs, upon these debts and judgments and upon the mortgage to Bowland, first to keep down the interest thereon, and then to apply the balance in reduction of the debt due to Mr. Reed. The bond further provides that Cooper, Russell, and Whipple shall not sell the land, or any portion of it, during this period of three years without the consent in writing of Briggs, and that they shall purchase in and hold the title under all of the levies referred to within the said period of three years, and make the same secure to them for the benefit of Briggs, and shall prevent the title from being lost by a foreclosure of the mortgage to Bowland during the same period, so " that Briggs may redeem if he chooses so to do." It is also provided that, " if at the end of the said three years, or at any time during the said period, Briggs shall pay, or

offer to pay in money the amount of the two debts of the said Reed then remaining, and what may remain of the debt or levy of the Life Insurance Company which the personal property attached thereon shall be found insufficient to pay, the said Cooper, Russell, and Whipple shall forthwith re-deed the said land to the said Briggs, subject to any lease they may have given to any tenant of the same."
\* \* \* " And, if at the end of the said three years, the said Cooper, Russell, and Whipple shall not have been reimbursed, or offered to be reimbursed, in money for the balance of the debts aforesaid which may remain due and unpaid in their hands, then they are to hold said lands as their own property free and clear of all claim by the said Briggs, they putting no impediment or obstacle in the way of the said Briggs paying said debts and redeeming the said lands." These, in substance, are the provisions of the bond, though not stated in precisely the same consecutive order in which they appear in that instrument.

It is a familiar principle that when several instruments are executed at one and the same time, between the same parties, and upon the same subject matter, they are to be treated as one instrument and construed together. *Reed* v. *Field & Briggs*, 15 Vt. 672 ; *Strong* v. *Barnes*, 11 Vt. 221 ; *Raymond* v. *Roberts*, 2 Aik. 204. The deed from Briggs to Cooper, Russell, and Whipple, and the bond executed by them to Briggs are accordingly to be construed as they would have been if the substance of the bond had been incorporated into the deed itself, or as if both constituted but a single instrument. It is claimed on the part of the orator that the deed and bond constituted a conveyance in mortgage, while, on the part of the defendants, it is insisted that the transaction was in fact a conditional sale, or a sale with an agreement for a repurchase within a given time. To ascertain the intent of the parties in entering into a contract or agreement, in a case where that intent upon the face of the instrument is doubtful, or the language used by them will admit of more than one interpretation, the court will look at the situation and motives of the parties making the contract or agreement, its subject matter, and the object to be attained by it, and will allow these circumstances to be shown by parol evidence notwithstanding the contract itself is in writing. *Lowry et al.* v. *Adams*, 22 Vt. 160. But we discover no

ambiguity in the terms of this bond, and no necessity to resort to parol evidence of extraneous facts for a proper understanding of its provisions; and, in such cases, instruments of this character should always be construed according to the intentions of the parties, to be derived from the instrument itself. *Graham* v. *Stevens*, 34 Vt. 166. It is apparent that the distinct and primary object of the bond was to assist Briggs by giving him further time to relieve the premises conveyed by the deed from the incumbrances to which those premises were then subject. A mortgage is defined to be a conveyance of an estate, by way of pledge, to secure a debt or the performance of some act, such as the payment of money or the furnishing of an indemnity, and to become void on payment or performance agreeably to the prescribed condition. 4 Kent's Com. 133 ; 1 Washburn on Real Property, 475. In 2 Story's Equity Jurisprudence, § 1018, it is said that " in determining what constitutes a mortgage, the particular form or words of the conveyance are unimportant, and it may be laid down as a general rule, subject to few exceptions, that whenever a conveyance, assignment, or other instrument, transferring an estate is originally intended between the parties as a security for money, or for any other incumbrance, whether this intention appear from the same instrument or from any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations therein expressed." And in 4 Kent's Commentaries, 144, *note*, it is said that if it be doubtful whether a mortgage or a conditional sale was intended, courts of equity always incline to treat the transaction as a mortgage, as more benign in its operation. The condition of the bond has all the elements of a condition of defeasance. It was executed, not as a subsequent and independent agreement, but at the same time with the deed ; and it shows very distinctly that it was contemplated by the obligors as well as by Briggs that Briggs should redeem the estate conveyed from the incumbrances then existing upon it. The terms used,—such as " *indemnity and security in addition to the security* of the lands of the said Briggs in the town of Worcester," etc.,    *    * " so that the said Briggs may *redeem* the same if he chooses so to do,"—" re-imburse,"—" paying said *debts* and *redeeming* said lands," —all are such as are strongly characteristic of a mortgage, and very

plainly imply that there was an indebtedness on the part of Briggs which was intended to be kept on foot, and that the estate conveyed by the deed was taken for the security of that indebtedness. Cooper, Russell, and Whipple were the sureties of Briggs, and if the title of Briggs to the land levied on had failed, their liability as his sureties would have continued, and they would have had a remedy against Briggs for any payment made by them on the debt. There was no extinguishment by them of any debt against Briggs *in presenti*, and no agreement on their part to pay the note and mortgage to Bowland or to indemnify Briggs against any suit or claim on that note. The land conveyed to them by Briggs was to be held by them as " indemnity and security *in addition* to the security of the " Worcester lands ; and it is not questioned that the Worcester lands were held by them as a security in the nature of a mortgage. It is said, on the part of the defendants, that there was no debt existing from Briggs to them ; but there was a debt which was capable of being enforced against the property which Briggs conveyed to them, and the absence of any personal liability on the part of Briggs to pay the money advanced or to be advanced by them in satisfaction of the levies is not a conclusive test whether the conveyance was intended to be absolute, or a security merely. It was not necessary that there should be a liability on the part of Briggs to pay, as well as on the part of his grantees to release or re-convey on being paid, to constitute the transaction a mortgage ; yet the want of this mutuality is proper to be considered in determining whether the transaction was a mortgage or not, though it is not of itself decisive. If a debt capable of being enforced in any way against either the person or the property of Briggs was purposely kept on foot, and if the conveyance by him was intended to secure the payment of that debt, the transaction was in fact a mortgage, and the estate was defeasible and redeemable, although there was no covenant or other personal obligation on his part to pay the money. *Flagg* v. *Mann*, 2 Sumn. 534 ; *Brown* v. *Dewey*, 1 Sandf. Ch. R. 56 ; 1 Washburn on Real Property, 481 ; *Graham* v. *Stevens*, *ubi supra*. If the land conveyed by Briggs was to be held by Cooper, Russell, and Whipple as " *indemnity* and *security*," it is apparent that there was, in the contemplation of the parties to the deed and bond an existing *debt*, for which the land was to be held as

such indemnity and security, and that the relation of principal and surety between Briggs and these defendants was expected still to continue. This view of the case is strengthened by the consideration that the transaction lacks the leading and characteristic element of a *sale ;* as no sum or equivalent was agreed upon by the parties to the deed as a *price* for property sold by the grantor and purchased by the grantees. Although these defendants insist that the transaction was a *sale* with a condition of re-purchase, yet neither of them, in answer or in testimony, makes any mention of a *price* as for a sale of the farm agreed upon between Briggs and themselves except Whipple, who, in his testimony (answer to 94th interrogatory,) says that " the Bowland mortgage was a part of the price of the farm." But Whipple, in his answer to the orator's bill says that the deed and bond contain the whole agreement between Briggs and Cooper, Russell, and himself, and this statement is not varied by the answers of the other defendants. We think that it is apparent, on the face of the deed and bond, that the premises conveyed by the deed were conveyed to be held as a security for a debt which was to be kept on foot, and that no debt against Briggs was extinguished or discharged in the present tense, at the time these instruments were executed, or was intended so to be. The two instruments must consequently be treated, when taken together, as creating a security in the nature of a mortgage.

If the transaction between the parties was in fact a mortgage, the right of redemption attached as an inseparable incident, created by law, which could not be waived by agreement. The principle has been uniformly asserted and applied in such cases that " if once a mortgage, always a mortgage," and it cannot be made otherwise by any agreement of the parties, made at the time of the execution of the deed of conveyance, or upon any future contingency whatever. *Baxter* v. *Willey*, 9 Vt. 276 ; *Wright* v. *Bates*, 13 Vt. 341 ; *Catlin* v. *Chittenden & Co.*, Brayton's Rep. 163 ; 4 Kent's Com. 143 ; 1 Washburn on Real Property, 496. In *Bayley* v. *Bayley, Adm'r*, 5 Gray, 505, it is said by SHAW, Ch. J., that " though it be ever so strongly expressed that the estate shall be absolute if the money is not paid at the day fixed, such stipulation would be void," and that " it does not depend upon the intent of the parties ; because it is an intent

contrary to the rules of law, which the law will not carry into effect."

It is insisted by the defendants that even if the deed and bond, when construed by themselves and without reference to extrinsic facts, are to be treated as creating a security in the nature of a mortgage, parol proof is admissible to show the actual understanding of the parties in respect to what they agreed to do, and how they regarded what they had done, and that when this is shown, it will be decisive in respect to the legal character of the instrument, and the decree will be in accordance with their intent. A deed, absolute on its face, may, in a court of equity, under certain circumstances, and especially as between the parties to it, be shown by parol evidence to have been given as a mortgage. *Baxter* v. *Willey*, and *Wright* v. *Bates & Niles, ubi supra; Conner* v. *Chase et al.*, 15 Vt. 764. And parol evidence has been received to show fraud or a mistake of material facts in cases in which, by reason of the fraud or mistake, it would be unconscientious to enforce the agreement according to its written terms, and also to explain the technical or local meaning of particular words or terms, or to explain a latent ambiguity in a written instrument. But as a general rule, where parties make a written contract or agreement, their declarations that it shall not have the legal effect which its terms import, though made at the time of its execution, are not admissible. If the deed and bond in this case were in fact a mortgage, the agreement that the claim of Briggs should cease at the expiration of three years would not alter its real character, for such an agreement is no more than the common condition of a mortgage deed. In *Kunkle* v. *Wolfersberger*, 6 Watts, (Penn.) 126, it is said that a formal conveyance may certainly be shown to be a mortgage by extrinsic proof, while a formal mortgage may not be shown to be a conditional sale by the same means," and the reason of this rule is stated by GIBSON, Ch. J., to be that " in the one case, such proof raises *an equity consistent with the writing*, while in the other, it would contradict the writing. In *Colwell* v. *Woods*, 3 Watts, 197, it was determined that a conveyance and simultaneous covenant to re-convey on repayment of the purchase money before a given day must be construed to be a mortgage, " though it appear by parol that the parties did not intend it to be so." *Brown*

v. *Nickle*, 6 Barr, 391. In *Woods* v. *Wallace*, 22 Penn. 171, it was again held that a written mortgage cannot be converted by parol evidence into a conditional sale, and the reason of this rule is very fully considered in the opinion delivered in that case by LEWIS, Ch. J., which may be referred to as a satisfactory exposition of the law of the subject. We have been unable to find any case which is in conflict with the rule that if a deed clearly appears upon its face to be a mortgage, parol evidence is not admissible to show that it was a conditional sale only, and not a mortgage, or to turn the real transaction into one of a different character. With this view of the proper rule of evidence applicable to the subject, we think that the testimony offered by the defendants to show that this deed and bond were not understood or intended by the parties as constituting a mortgage must be treated as inadmissible for that purpose, although we might regard it, if it was proper and admissible testimony, as being amply sufficient to establish all that is claimed on the part of the defendants in respect to the intent of the parties to those instruments.

The next inquiry which the case suggests is, whether the deed and bond, taken together, should not be treated as a mortgage conferring upon the mortgagees a power of sale. The whole theory of the defence, so far as it gives a character to these instruments, proceeds on the ground that the real character of the transaction was that of a sale upon a condition and not that of a mortgage. It is not claimed that there is any *express* power of sale contained in these instruments, but it is insisted that the provision in the condition of the bond that the obligors shall not sell any part of the premises conveyed by the deed within the period of three years from the 1st of April, 1856, without the consent in writing of Briggs, as before mentioned, is an *implied* authority to sell after that time. The maxim, *expressio unius est exclusio alterius* must be inverted, before it can be considered applicable to the support of this claim. A power of sale given by a mortgage deed is not an ordinary power, and as between the mortgagor and mortgagee, it should be strictly construed. In this state, it is in practice unusual if not unknown. We have no statute regulating its exercise, and a sale under it might be made without the concurrence of the mortgagor, and even without notice to him. It is

too important a power to rest upon implication and local reasoning, and ought not, as we think, to be recognized in any case unless it is conveyed by an express grant and in clear and explicit terms.

It necessarily results from these conclusions that the deed and bond must be allowed to have the effect of a security in the nature of a mortgage, and that these instruments, taken together, vested in Briggs the equity of redemption which is asserted and claimed in his bill of complaint.  On the 7th of April, 1856, the defendant Whitcomb purchased of the defendants Cooper, Russell, and Whipple the premises conveyed by the deed for the price of ten thousand seven hundred and fifty dollars ; but, when he made this purchase, he had full notice of the claim of Briggs in respect to the real character of the conveyance under which those defendants derived and held their title to the premises.  The evidence upon this point is full, clear and uncontroverted.  Being a purchaser with notice, he acquired by his purchase no other or greater rights than those which the defendants Cooper, Russell and Whipple could, at the time of the purchase, set up against Briggs.  He consequently can stand in no better position than theirs, in defending against the claim of Briggs ; and the equity of redemption of Briggs in the premises can be asserted as well against him as against them.

The next question to be considered is, whether the defendant Gleason was properly made a party defendant in this case.  So far as the orator's bill imputes to Gleason and to others of the defendants a conspiracy to effect the ruin of the orator, we have no difficulty in coming to the conclusion that it should be dismissed, as the testimony wholly fails to support this charge.  We discover nothing in the conduct of Gleason as an officer which can justly be made the ground of complaint against him, either as being oppressive towards the orator, or as transcending the line of his official duty.  But it is admitted by Gleason, both in his answer and in his testimony, that he received the proceeds arising from the sale of property belonging to Briggs which was attached in the suit in favor of the Life Insurance Company, subject to the lien of other attachments and levies previously made thereon.  This admission would make him liable to account to Briggs for the proper application of these funds ; and, by his answer and testimony, he sets forth a particular account in

detail of the proceeds of the attached property, and of the application which he made of those proceeds. We have made no particular examination of this account, nor considered the allegations which have been made in respect to it, because, if the duty or liability to render the account is established, this examination should, in the first instance, be made by a master, and it is no part of the duty of this court to assume duties and functions which appropriately belong to an officer of the court of chancery, or to anticipate questions which may properly arise when those duties are performed. The defendants Cooper, Russell, and Whipple stand in the position of equitable assignees of the debt of the Life Insurance Company against Briggs, and, as such, they have an interest in the results of the same account, and would be entitled in equity to claim from Gleason any funds remaining in his hands and belonging to Briggs which ought to be applied upon that debt. Whether there are any such funds or not can only be determined on a proper accounting by Gleason before a master. By the condition of the bond of Cooper, Russell, and Whipple to Briggs, it was provided that the sum which Briggs was to pay in compliance with its provisions was to include " what may remain of the debt or levy of the Life Insurance Company *which the personal property attached thereon shall be found insufficient to pay;*" and, to ascertain what this deficiency may be, it is necessary that an account should be taken of the attached property sold by Gleason, and of the application of those proceeds. Under this provision of the bond, an account by Gleason of the funds of Briggs in his hands, if there be any, which may be applicable to the debt in favor of the Life Insurance Company against Briggs is so essential that, without it, the amount equitably due from the orator on the security of the mortgage can never be ascertained. For these reasons, Gleason was, as we think, properly joined as a party defendant in this suit, and the orator is entitled to a decree directing the taking of this account. Even if there was a misjoinder of Gleason as a party, it was apparent on the bill itself, and the objection that he was improperly joined, if not made by demurrer to the bill or in the answer, should be considered as waived, and as coming too late when made at the hearing. *Chipman* v. *City of Hartford,* 21 Conn. 489, 499.

We do not consider the defendant Hodges a proper or necessary

party to the orator's bill. It appears that all the right and title of Joseph Reed to the land of the orator levied on and set off on the executions in favor of said Reed as before mentioned was conveyed by him to Hodges by a quit-claim deed on the 18th of April, 1853; and that all the right and title of the Life Insurance Company to the land of the orator levied on and set off on the execution in its favor as before mentioned was conveyed by the Life Insurance Company to Hodges by a quit-claim deed on the 23d of April, 1853; and that, on the 25th of April, 1853, Hodges conveyed to the defendants Cooper, Russell, and Whipple, by a quit-claim deed, his right and title in and to the land included in the levy of the execution in favor of Mr. Reed; and that on the same day, by a like quit-claim deed, he also conveyed to the defendants Russell and Whipple and Saul Bishop his right and title in and to the land included in the levy of the execution in favor of the Life Insurance Company, and that, on the 31st of March, 1856, Saul Bishop conveyed to the defendants, Cooper, Russell, and Whipple, by a quit-claim deed, his right and title in and to the farm in question, described as the farm formerly owned by Briggs, on which these levies were made. Each of these deeds was recorded immediately after it was executed.

This suit was commenced on the 27th of August, 1856, and at that time, Hodges neither had nor claimed to have any interest in the land included within either of these levies. The orator, in his bill, seeks for a discovery only from this defendant, but prays for no relief against him. When this suit was commenced, this defendant had not even a nominal interest in its subject matter, as he had long before that time parted with his interest in the premises, and, consequently, he was unnecessarily and improperly made a party to the orator's bill, and should be dismissed with costs.

All questions in respect to the form and details of the orders for the taking of the accounts and of all other necessary orders in the cause should be settled by the chancellor; and all questions in respect to the allowance of costs, except as to the defendant Hodges, should be reserved to be considered and determined on the final hearing in the cause.

The decree of the chancellor, by which the orator's bill was *pro forma* dismissed with costs, is reversed, and the cause is ordered to

be remitted to the court of chancery with directions that a decree be made therein declaring that the deed of Briggs to the defendants Cooper, Russell, and Whipple, dated the 8th of January, 1853, and their bond to him of the same date, mentioned and referred to in the complainant's bill, taken together, constituted a mortgage security as claimed in the bill, and that, by virtue of the same, Briggs was, and his legal representatives are, entitled to the equity of redemption in the premises conveyed by the deed which is claimed in the bill, and providing for the taking of such accounts as may be necessary to ascertain the amount due in equity to these defendants on account of the debts secured by this mortgage, including an account of the rents and profits of the mortgaged premises which came to the hands of these defendants, or of the defendant Whitcomb, or of any other person or persons by their order, or for their use, or which they without their wilful default might have received, after the defendants Cooper, Russell, and Whipple took possession of the mortgaged premises, and also including an account of the proceeds arising from the sales of the personal property of Briggs which was attached by the defendant Gleason on the writ in favor of the National Life Insurance Company against Briggs, and of the proper application of these proceeds, so far as may be necessary to ascertain whether the same or any part thereof are applicable to, or should be applied in, the payment of the debt or levy of the Life Insurance Company against Briggs, and also providing that when the amount due in equity to the defendants Cooper, Russell, and Whipple is ascertained and established, the cause shall be proceeded with to a final order and decree in favor of the complainant Wing, the executor of the last will and testament of Briggs against the defendants Cooper, Russell, and Whipple and the defendant Whitcomb, for the redemption of the mortgaged premises, according to the usual course and practice of the court of chancery,—the decree for the redemption of the mortgaged premises to be applicable as well to the premises called the "Worcester lands," referred to in the orator's bill and in the answers of the defendants Cooper, Russell, and Whipple as to the premises conveyed by Briggs to those defendants by the said deed dated the 8th of January, 1853,—and also providing that the bill be dismissed as to the defendant Hodges with costs, and that all questions in

respect to the farm and details of the orders for the taking of the accounts and of all other necessary orders in the cause shall be settled by the chancellor, and that all questions in respect to the allowance of costs, except as to the defendant Hodges, shall be reserved to be considered and determined on the final hearing in the cause. .