NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 102

No. 2015-376

| | |
|---|---|
| Sandy Gordon Rounds, John F. Gordon, Richard Gordon and Margaret W. Gordon | Supreme Court |
| v. | On Appeal from Superior Court, Chittenden Unit, Civil Division |
| Malletts Bay Club, Inc. and James McGarry | March Term, 2016 |

Helen M. Toor, J.

Matthew B. Byrne and Matthew S. Stern of Gravel & Shea PC, Burlington, for
 Plaintiffs-Appellees.

James B. Anderson of Ryan Smith & Carbine, LTD., Rutland, for Defendants-Appellants.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **ROBINSON, J.** This case revolves around sixteen shares in the Malletts Bay Club, Inc. (MBC) that have been sitting in escrow since 1998, when George Gordon conveyed the associated real property to J. Douglas Johnson. On summary judgment, the trial court ruled that defendant James McGarry, as agent for transfer of the MBC shares, breached the parties' contract and his fiduciary duty by failing to issue the shares to Gordon's successors upon their demand, and that defendant MBC had waived its right to challenge Gordon's failure to transfer those shares to Johnson by agreeing to the Gordon-to-Johnson conveyance. We conclude that the agreement defining the parties' rights and obligations with respect to the MBC shares does not require McGarry to return the shares to Gordon on demand, that based on the undisputed

evidence MBC did not waive its right to enforce its bylaws with respect to the transaction, and that therefore defendants are entitled to summary judgment and plaintiffs are not. We reverse and remand for further proceedings to resolve any remaining claims of plaintiffs that were not the subject of the cross motions for summary judgment.

¶ 2. The material facts are not in dispute unless otherwise noted. In 1968, George Gordon purchased property in MBC. As part of that purchase, he received twenty-seven shares of MBC stock. MBC is an association of homeowners organized to occupy and manage the jointly owned property. In 1975, Gordon gave four shares of MBC stock to his children, and he retained twenty-three shares in his name.

¶ 3. In 1992, MBC's bylaws were amended. Prior to the 1992 amendments, section 24 of the bylaws included a requirement that an "owner of real property within or contiguous to [MBC who] wishes to sell or transfer that real property to a nonmember/stockholder . . . must either include in the sale, or insure that the purchaser has at the time of the sale, at least seven shares of [MBC] stock." The 1992 amendment added a requirement that "the selling member/stockholder must include in the sale all of his or her shares of stock in [MBC]." Both before and after the 1992 amendment, the MBC bylaws granted MBC a right of first refusal with respect to the sale of property in MBC or MBC stock to anyone other than specified family members.

¶ 4. In 1997, Gordon conveyed his residence to his daughter, Sandy Gordon Rounds, as "Trustee of the George S. Gordon Qualified Personal Residence Trust." In 1998, the Trust sold the property to Johnson. In connection with that transaction, on February 12, 1998, James McGarry, as President and duly authorized agent of MBC, signed a "Waiver and Agreement" providing as follows:

> NOW COMES [MBC] by and through its duly authorized agent,
> James McGarry, President, and does hereby . . . waive its right of
> first refusal to purchase 23 shares of stock in [MBC] and the

2

property owned by George S. Gordon Personal Residence Trust . . . Said waiver being effective the 10th day of February, 1998. [MBC] represents and warrants that said waiver was obtained and is granted in accordance with the provisions of the By-Laws.

Furthermore, [MBC] acknowledges and agrees with the sale of said property at Mallets Bay Club and 7 shares of [MBC] stock to J. Douglas Johnson.

¶ 5. That same day, Gordon's attorney sent James McGarry a letter stating:

As you are aware, George Gordon recently sold his Mallets Bay Club property to J. Douglas Johnson. At the time of the sale, George owned 23 shares in the Malletts Bay Club, evidenced by Stock Certificate no. 113, which certificate I am hereby enclosing. I am also enclosing George's Stock Transfer Agreement whereby you are to now issue 7 shares to Mr. Johnson and retain the remaining 16 shares in escrow until further directive by George or, if necessary, pursuant to the order of a court of competent jurisdiction.

The enclosed handwritten document, signed by Sandy Rounds, as Trustee of the George S. Gordon Trust and also signed by George Gordon, reflected an agreement to transfer the stock certificate to the transfer agent with instructions for the agent to immediately issue seven shares to J. Douglas Johnson. The document further provided: "The remaining sixteen (16) shares shall remain in the control and custody of the transfer agent until further directive by George Gordon or, if necessary, the order of a court of competent jurisdiction." It further assigned Johnson a right of first refusal to purchase the sixteen shares from Gordon at a price and on terms to be determined. George Gordon also signed this document on a line labeled "Agreed."

¶ 6. The next day, George Gordon signed a substantially similar document, entitled "Stock Transfer Agreement" which provides that:

I, George S. Gordon, the owner of twenty-three (23) shares of [MBC] . . . hereby sell, assign, and transfer unto J. Douglas Johnson . . . seven [7] shares of said stock, and do hereby irrevocably constitute and appoint James McGarry my transfer agent and attorney to transfer the said seven (7) shares of stock on the books of [MBC] with full power of substitution in the premises.

3

> Furthermore, I do hereby direct that my remaining sixteen (16) shares of the capital stock of [MBC], shall remain in the control and custody of James McGarry until further directive by me or, if necessary, pursuant to the order of a court of competent jurisdiction.[1]

¶ 7.    In September 1998, Gordon sent a written demand directing McGarry to send him a stock certificate for the remaining sixteen shares of the MBC stock that had not been assigned at the time of the February 1998 sale to Johnson.  McGarry did not comply with that request.

¶ 8.    In November 1998, Gordon received a letter from Jan Rozendaal, the new president of MBC.  Rozendaal stated, "As the incoming president of the Malletts Bay Club I seem to have inherited the matter of your 16 shares of stock."  The letter references correspondence between Gordon and Johnson concerning the sixteen shares, and says, "While this is primarily a matter between you and Doug Johnson, the club obviously has a very real interest in the matter."  The letter acknowledges and responds to Gordon's argument that the 1992 amendment to the MBC bylaws effected a confiscation of his additional shares, and notes that Gordon had voted for the bylaw amendment which unanimously passed in a 1992 directors meeting and the subsequent stockholders meeting.  Rozendaal stated that the directors continued to support the amendment, and if Gordon was anticipating any change or repeal of the bylaw he would be disappointed.  Rozendaal concluded by asserting that even if Gordon has decided that his support for the 1992 amendment was a mistake, he is legally and ethically bound by it.

¶ 9.    In December 1998, Gordon responded by letter to Rozendaal.  He expressed his continuing opposition to the 1992 amendment, stating that it is so grossly unfair that he has chosen to challenge it.  He said that one ill-advised and casual vote on what has proved to be an unworkable and unfair bylaw should not be taken as a moral commitment to self-enforce it.

---

[1]  The record reflects that the Trust owned the real property but does not reflect that it owned the MBC shares.  We need not decide which of these two documents is operative.

Gordon concluded: "I am disappointed to learn that the Board seems disinclined to take another look at Section 24. I guess we'll have to wait for a few more owners to sell and repeat my experience."

¶ 10.   There were no further communications between Gordon and the MBC board or McGarry. The matter lay dormant until after Gordon's death. In October 2010, Gordon died, leaving his sixteen shares of MBC stock to his four children, Sandy Gordon Rounds, John F. Gordon, Richard C. Gordon, and Margaret W. Gordon. The Court of Common Pleas of Erie County, Pennsylvania purported to distribute the sixteen shares of MBC stock to Gordon's children, and Gordon's estate was closed. Defendants dispute the efficacy of that purported distribution.

¶ 11.   Subsequently, in January and then May of 2011, Rounds wrote to McGarry requesting that he issue the sixteen shares of MBC stock to Gordon's children (four shares apiece). MBC and McGarry both declined in separate communications. They took the position that pursuant to the 1992 bylaw, Gordon was required to include in his sale all of his MBC shares and therefore he had no transferable MBC shares at the time of his death. They indicated that no transfer of stock would be made to Gordon's family without an order from a Vermont court.

¶ 12.   Plaintiffs filed suit against MBC and McGarry on October 27, 2014, asserting breach of contract and breach of fiduciary duty against McGarry for failing to issue the sixteen shares to Gordon's children on demand of Sandy Gordon Rounds, and seeking a declaratory judgment that MBC waived its right to purchase Gordon's shares or to object to Gordon's transfer to Johnson of only seven of his twenty-three shares in 1998 at the time the home was sold. Plaintiffs sought a declaration that the remaining sixteen shares belonged to them. Defendants moved for summary judgment on the grounds that the complaint was barred by the statute of limitations, and that plaintiffs' claims were barred by estoppel, waiver, and ratification

because Gordon expressly conveyed his property subject to the MBC bylaws and Gordon had waived any claim that the 1992 bylaw amendment was invalid by supporting the amendment. Defendants sought dismissal of plaintiffs' claims. Plaintiffs cross-moved for summary judgment arguing that the statute of limitations did not begin to run until defendants' 2011 refusals to transfer the shares, and that MBC waived any claim to the shares when it signed the Waiver and Agreement in connection with the 1998 conveyance from Gordon to Johnson.

¶ 13. In August 2015, the trial court issued its decision on the cross-motions for summary judgment. The trial court concluded that: (1) plaintiffs' claims were not barred by the statute of limitations because McGarry did not actually refuse to issue the sixteen shares until 2011; (2) McGarry breached his fiduciary duty and his agreement as escrow agent by not transferring the sixteen shares when requested to do so by Sandy Gordon Rounds in 2011; and (3) plaintiffs were entitled to a declaratory judgment that by signing a document approving Gordon's sale to Johnson in 1998, MBC waived its right to challenge Gordon's failure to transfer the sixteen shares to Johnson under the 1992 amendment, and that the shares belong to plaintiffs. Defendants appealed.

¶ 14. We review a motion for summary judgment de novo under the same standard as the trial court. In re All Metals Recycling Inc., 2014 VT 101, ¶ 6, 197 Vt. 481, 107 A.3d 895. "[S]ummary judgment is appropriate only when the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Bacon v. Lascelles, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996) (citation omitted); V.R.C.P. 56(a).

¶ 15. Plaintiffs' case rests on the claims that the Stock Transfer Agreement compels McGarry to issue sixteen shares to Gordon, or his successors, on demand, without condition, and that the Waiver and Agreement reflects MBC's waiver of the bylaw requirement added in 1992 requiring that a seller convey all the seller's MBC shares to the buyer of a property. For the reasons set forth below, we conclude that: (1) the agreement defining the parties' rights and

6

obligations with respect to the MBC shares does not require McGarry to return the shares to Rounds on demand, but, rather, requires him to relinquish the shares only upon a court order adjudicating the validity of the 1992 bylaw amendment; and (2) by signing a document approving the Gordon-to-Johnson sale, MBC did not waive its right to challenge Gordon's failure to transfer the contested shares to Johnson as required by the 1992 amendment.[2]

¶ 16.    Generally, the proper interpretation of a contract is a question of law, which we review without deference.  Dep't of Corr. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 11, 183 Vt. 348, 950 A.2d 1201.  As with any contract, "our goal is to give effect to the intent of the parties as it is expressed in their writing."  Southwick v. City of Rutland, 2011 VT 53, ¶ 4, 190 Vt. 106, 35 A.3d 113.  When the contract language is unambiguous, we take these words to represent the parties' intent.  Hamelin v. Simpson Paper (Vt.) Co., 167 Vt. 17, 19, 702 A.2d 86, 88 (1997).  "We assume that parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless."  In re West, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996).  The circumstances surrounding the making of an agreement are admissible in determining whether the agreement is ambiguous.  Isbrandtsen v. North Branch Corp., 150 Vt. 575, 578, 556 A.2d 81, 84 (1988).

¶ 17.    The Stock Transfer Agreement transfers the sixteen shares to the control of James McGarry "until further directive by [Gordon] or, if necessary, pursuant to the order of a court of competent jurisdiction."

¶ 18.    The circumstances surrounding the execution of these documents undisputedly illuminates their clear meaning.  In their statement of undisputed facts, plaintiffs acknowledge that Gordon executed the Stock Transfer Agreement "[i]n connection with the sale of the

---

[2]    We begin by considering the merits rather than the statute-of-limitations defense because the statute of limitations might present an obstacle to plaintiffs' claims against McGarry, but does not necessarily resolve the central issue in this appeal: who owns the sixteen shares that continue to sit in limbo?  Because we ultimately conclude that plaintiffs' claims do not survive summary judgment on the merits, we need not address the statute-of-limitations argument.

property and MBC shares" to Johnson. Plaintiffs' complaint acknowledges that at the time there was a dispute over the validity of the 1992 bylaw amendment. Defendants likewise point to, among other things, correspondence by Gordon in the fall of 1998 in which he describes the 1992 amendment as "a de facto confiscation" and explains that he has chosen to challenge the amendment.

¶ 19. If McGarry was unconditionally required to relinquish the stocks upon Gordon's directive, as Gordon contends, the "if necessary" clause contemplating a court order as an alternative would serve no purpose. Gordon's asking McGarry to hold the shares would make no sense if the expectation was that Gordon could get them back on demand, without limitation. The only reasonable understanding of the document is that McGarry was required to release the shares upon an agreement between the parties or an order arising out of litigation resolving the validity of the bylaw amendment. Accordingly, McGarry has not breached any obligation, whether contractual or fiduciary, by failing to issue shares to Gordon or his successors upon demand, and defendant McGarry is entitled to summary judgment and dismissal of the breach of contract and breach of fiduciary duty counts in plaintiffs' complaint.

¶ 20. Given this, it is also clear that MBC did not waive its right to enforce the 1992 bylaw amendment by signing a document approving the sale. Instruments executed as part of the same transaction should be read together to discern the intent of the parties. See O'Brien Bros.' P'Ship, LLP v. Plociennik, 2007 VT 105, ¶ 15, 182 Vt. 409, 940 A.2d 692 ("[T]wo instruments dealing with the same subject matter [which] are executed at the same time by the same parties . . . should be construed together."); Wing v. Cooper, 37 Vt. 169, 178 (1864) ("[W]hen several instruments are executed at one and the same time, between the same parties, and upon the same subject matter, they are treated as one instrument and construed together."); 11 Williston on Contracts § 30:26 (4th ed.) (noting that "all writings which are part of the same transaction" may be "interpreted together," even where there is no specific incorporation clause

8

contained in any of the agreements—"absent anything to indicate a contrary intention, written instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract"). The Stock Transfer Agreement and the Waiver and Agreement were undisputedly executed at the same time and neither should be construed in isolation.[3]

¶ 21. Viewing the documents together, the only coherent explanation of the parties' intent is that they sought to allow the Gordon-to-Johnson property transfer to close notwithstanding their differences concerning the bylaw requirement that Gordon transfer all of his MBC shares in connection with that conveyance. The parties agreed that McGarry, then president and transfer agent for MBC, would hold the sixteen contested shares until the dispute could be resolved, by agreement or court order if necessary, and MBC would not stand in the way of the Gordon-to-Johnson transfer. Gordon could then complete his sale to Johnson and then challenge the 1992 amendment, which he had come to view as unfair and confiscatory, in the context of negotiations or court proceedings concerning the sixteen shares.[4] The Waiver and Agreement did not constitute a waiver by MBC of the requirements of the 1992 amendment, but, rather, reflected MBC's agreement to relinquish its rights of first refusal and to allow the Gordon-to-Johnson sale with the understanding that the shares would be held by

---

[3] The "Stock Transfer Agreement" signed by George Gordon was executed the day after MBC signed the "Waiver and Agreement," but the Stock Transfer Agreement essentially restates the provisions of the document executed the previous day by Sandy Gordon Rounds, as trustee of the George S. Gordon Trust, and also signed that day by George Gordon.

[4] Although we do not rely on this document in deciding the case, we note that an undisputed November 2013 email from Sandy Gordon Rounds to the president of MBC expressly validates our understanding. The email written by Sandy Gordon Rounds explains that when Johnson bought the Gordon home in February of 1998, he was not willing to purchase any shares other than the required seven. Gordon was not willing to give the excess shares away. Gordon allowed the remaining sixteen shares to be held in escrow "in order to allow the closing to proceed."

McGarry pending resolution of the outstanding issues concerning the sixteen shares, whether by agreement or court order.

¶ 22. Because we conclude that MBC did not waive its right to enforce the 1992 amendment to the MBC bylaws by signing the Waiver and Agreement, defendant is entitled to summary judgment dismissing plaintiffs' request for a declaratory judgment that defendant waived its right to enforce that provision.

¶ 23. Our award of summary judgment to defendants on these issues does not fully resolve this case. As a practical matter, an order dismissing plaintiffs' complaint—the relief sought by defendants—would leave the parties back in the exact limbo they have occupied for eighteen years. McGarry would hold the sixteen shares and may be required to await a court order before taking any action to transfer those shares. Moreover, in their complaint, plaintiffs alleged that the 1992 amendment was "not validly voted on and approved" and requested a declaration that the remaining sixteen shares of MBC stock belong to plaintiffs. Although we reject plaintiffs' argument that MBC waived its right to enforce the 1992 bylaws amendment, we do not in this appeal address plaintiffs' remaining claim that the amendment was not validly voted on and approved. This claim was not the basis for plaintiffs' summary judgment request, and is not resolved by our award of summary judgment to defendants on plaintiffs' other claims. Accordingly, we reverse the trial court's order directing the shares be issued to plaintiffs and remand for a hearing to resolve this outstanding issue in a manner consistent with this opinion.

Reversed and remanded.

FOR THE COURT:

_____
Associate Justice

10